SETZER v. DEAL.

(Filed May 17, 1904).

1. NEGOTIABLE INSTRUMENTS—*Bills and Notes.*

> The knowledge by the *bona fide* assignee of a note of the crookedness in business matters of the assignor does not defeat the title of the assignee or make it his duty to enquire relative to the note.

2. NEGOTIABLE INSTRUMENTS.

> That the maker of a note does business near the assignee is immaterial on the question as to whether the assignee was a *bona fide* holder.

ACTION by Setzer & Russell against A. A. Deal, heard by *Judge T. J. Shaw* and a jury, at November Term, 1903, of the Superior Court of CATAWBA County. From a judgment for the defendant the plaintiffs appealed.

*E. B. Cline* and *D. L. Russell,* for the plaintiffs.
*Self & Whitener* and *T. M. Hufham,* for the defendant.

PER CURIAM. All the evidence was to the effect that the defendant executed two notes to the Deering Harvester Company, one in the sum of $50 and the other in the sum of $55, for an "Ideal Binder," sold by that company to him; that those notes were destroyed in the presence of the defendant by Yoder, and that thereupon the defendant executed the note sued upon in this action. Yoder claimed to be one of the firm of the Hickory Implement Company and testified that he endorsed the same to the plaintiffs for value. The defendant attempted to prove that Yoder and the plaintiffs conspired to cheat the Deering Harvester Company by destroying the evidence of the indebtedness of the defendant to that company, and in taking the note of the defendant for

the amount.    There is abundant evidence in the case going
to show that Yoder practiced a fraud upon the Deering Har-
vester Company in the transaction, but we can see from the
evidence only one suspicious circumstance tending to prove
the complicity of the plaintiffs in the matter, viz., that
according to the defendant's testimony, after the plaintiffs
alleged they bought the note sued upon, the defendant called
upon the plaintiffs and asked them if they had bought the
note from Yoder, and, if so, what they paid for it, and they
declined to answer the questions.    That was, as we have said,
after the alleged purchase of the note.    The defendant, with
the purpose to show that the plaintiffs were in possession of
such facts as should have put them on inquiry as to the title
of Yoder to the notes sued on, asked Setzer, one of the plain-
tiffs, if he did not know at the time of the transfer of the
notes that there were charges against Yoder of crookedness
in business transactions.    And the witness was further asked,
for the same purpose, if he tried to find out anything else
about the note, and further, if he knew the Hickory Imple-
ment Company did business next door to the plaintiffs.    The
witness was compelled to answer that he had heard there were
some charges against Yoder; that he did not make inquiry
about the note or the plaintiffs' title to it, and that he did
know that the Hickory Implement Company conducted busi-
ness next door to the plaintiffs.    We are of the opinion that
the evidence was incompetent.    The defendant had executed
the note.    It was not due when it was transferred, and the
plaintiffs had testified that they had given $100 for it and
knew nothing nor had heard anything to its dishonor; and
the defendant had introduced no evidence in contradiction.
The purchase of the notes seems to have been made for value,
in good faith and in due course of business.    Any knowledge
on the part of the purchaser of the assignor's crookedness in
business matters could not be allowed to defeat the rule of

SETZER *v.* DEAL.

law which gave to a purchaser of a note for value, in good faith and in regular course of business, the title to the property. It would be almost impossible for the business of banking to be carried on if it was incumbent that bank officers, whenever negotiable paper was offered for discount or sale, to inquire into whether any of the parties to be charged were crooked in their business methods.

We cannot see what connection the fact that the Hickory Implement Company did business next door to the plaintiffs could have to do with the matter. Neither in fact nor in law did it have any connection with the matter. We see nothing in the evidence, as we have said, which put the plaintiffs upon notice to look into or find out anything about Yoder's right to the note. "What circumstances will amount to actual or constructive notice of any defect or infirmity in the title to the note, so as to let it in as a bar or defense against a holder for value, has been a matter of much discussion and of no small diversity of judicial opinion. It is agreed on all sides that express notice is not indispensable, but it will be sufficient if the circumstances are of such a strong and pointed character as necessarily to cast a shade upon the transaction and to put the holder upon inquiry." Story Prom. Notes, section 197. The same principle of law was held in *Loftin v. Hill,* 131 N. C., 105.

New Trial.