Despres, Bridge & Noel *v.* Hough Drug Co.

[86 South. 359, No. 21266.]

1. Bills and Notes. *Breach of maker's contemporary agreement no defense against bona fide holder.*

A promissory note, executed after the adoption of the Negotiable Instrument Law of 1916 when sold before maturity to a purchaser for value without notice of defenses. cannot be defeated on the ground that the original payee had not complied with the terms of a contemporary agreement, which constituted the consideration of such note.

2. Bills and Notes. *Failure of consideration no defense against bona fide purchaser.*

Where a note, executed under the Negotiable Instrument Law, is assigned to a third person, a valid consideration is presumed, and in the hands of a holder for value before maturity is not subject to a defense on the ground of failure of consideration.

3. Bills and Notes. *Investigation of original payee by postal department insufficient to destroy bona fides of buyer.*

Where a maker of a negotiable promissory note is sued by an assignee who acquired the note before maturity in good faith, the mere fact that the Post Office Department conducted an investigation of the payee with a view of issuing a fraud order against such payee, and that the assignee knew of such investigation when it acquired the note, is not sufficient to destroy the *bona fides* of the buyer of such note, where there is nothing to show fraud as to the particular note in such investigation, and the knowledge thereof.

4. Bills and Notes. *Failure of corporation payee to file charter as condition to doing business no defense against bona fide holder.*

Where the maker of a promissory note executes and delivers a note to a corporation, and such corporation has assigned the note to a purchaser for value before maturity, a defense by the maker that the payee corporation had not filed its charter in the State where the note is made and where it is payable is not maintainable under the Negotiable Instrument Law.

Appeal from circuit court of Sunflower county.

Hon. H. H. Elmore, Judge.

Action by Despres, Bridges & Noel against the Hough Drug Company. Verdict for defendant, motion for new trial was overruled, and plaintiff appeals. Reversed and rendered.

*Percy Bell,* for appellant.

We submit that the Partin Manufacturing Company was not doing business within the state of Mississippi within the meaning of chapter 24 of the Code of 1906, and therefore was not subject to its provisions. The whole question hinges on the meaning of "doing business."

We refer the court to the following decisions from which the court concluded and we also, that the Partin Manufacturing Company did not violate the state of Mississippi: "The expression 'doing business,' as used in Laws of Tenn., 1877, chapter 31, and Laws 1891, chapters 97, 122, regulating foreign corporations 'doing business' in the state, is to be interpreted with regard to something

more than the mere linguistic signification of the words used to the ordinary ear, and it has acquired in legal terminology a much narrower meaning than that usually given to it. A corporation is to be considered as 'doing business' in the state only where it becomes in a sense domesticated therein, subject to be sued in the courts of the state, and responsible to its citizens, as are domestic corporations. *Caesar* v. *Campbell* (U. S.), 83 Fed. 403, 422."

" 'Doing business' as used in Pennsylvania laws imposing a tax on foreign corporations 'doing business' within the state, means the employment by the corporation of some of their capital in the state, or at least, the establishing of a place of business therein. The mere fact that a foreign corporation entered into a contract with some of their stockholders who resided in Pennsylvania to buy certain articles would not constitute a "doing business" within the meaning of the act. *Kilgore* v. *Smith,* 15 Atl. 698, 699, 122 Pa. 48."

"A foreign manufacturing corporation which merely places its products in the hands of local merchants to be sold on commission is engaged in interstate commerce, and hence may sue for wrongful conversion of such products without having filed its articles with the secretary of state, as required of foreign corporations doing business within the state. *Allen* v. *Tyson-Jones Buggy Co.,* 40 S. W. 393-395, 91 Tex. 22."

" 'Doing business' as employed in Acts Tenn. 1887, chapter 226, p. 386, relative to foreign corporations doing business in the state, means any transaction with persons or any transaction concerning any property situated in the state, through any agency whatever acting for it within the state. *Romaine* v. *Union Ins. Co. Co.* (U. S.), 55 Red. 751, 754."

From the above decisions, we submit that the conclusion unescapable is that as the Partin Manufacturing Company had no place of business within the state of Mississippi and merely went into contract with its citizens, that it

was not violating its statute. The matter has, however, been further gone into by this court in the case of *Quartette Music Company* v. *Haygood*, 67 So. 211, in which the court held, in substance that to be subject to the statute there must be some local domicile or branch house within the state of Mississippi.

### FRAUD OF PART IN MANUFACTURING COMPANY.

We submit that there is nothing in the proof whatsoever establishing any fraudulent intent upon the part of the Partin Manufacturing Company, nor does the proof sustain the allegation of the special plea that the contract was not in any way performed.

Under our Negotiable Instrument Law, Despres, Bridges & Noel were plainly innocent purchasers for value and could collect the notes even though they had known that the Partin Manufacturing Company was crooked and did crooked business as will be shown by authorities hereinafter cited. These same authorities show that no matter what they may have known of the contract or the various other dealings of the Partin Manufacturing Company, that unless actual notice was brought home to them of actual fraud in connection with these particular notes, they could still recover on the notes. Of course no such notice was ever brought to them.

We submit that there is no proof of fraud in connection with these notes and fraud must be proved with certainty. See *Locke* v. *Fieldman*, 90 Miss. 3.

We submit that no matter what other notes may have proven worthless or been withdrawn for any other reason, that these notes were discounted and discounted for value. Authorities: Third Ruling Case Law, page 1067, section 272, and 273. "The title of one who buys ordinary commercial paper in good faith and before its maturity is not vitiated by the fact that there were suspicious circumstances which might have put him upon inquiry."

"The courts universally hold that knowledge that a note was given in consideration of the executory agreement or contract of the payee, which has not been performed, will

not deprive the indorsee of the character of a holder in
due course, unless he also has notice of the breach of that
agreement or contract. So knowledge of a warranty on a
sale in which a note was given is held not to affect the
rights of a purchaser of the note for value before maturity,
if he had no knowledge of the breach of the warranty. A
recital in the instrument respecting such agreement or
warranty is not sufficient of itself to advise him that there
was, or would necessarily be, a failure of consideration,
the presumption of law would be that the contract would
be carried out in good faith, and the consideration per-
formed as stipulated." Third Ruling Case Law, page 1071,
sections 277 and 278; *McNair* v. *Cooper*, 4 Ala. 660 (1853);
*Waterhouse* v. *Kendall*, 63 Mass. (11 Cush.) 128 (1853);
*Traver* v. *Stevens*, 65 Cush. 167 (1868); *Hodgkins* v. *Moul-
ton*, 100 Mass. 309 (1875); *Backus* v. *Spaulding*, 116 Mass.
420, 45 N. Y. S. 111, 16 App. Div. 141, affirmed; *Desmond-
Dunne Co.* v. *Friedman-Doscher Co.*, 56 N. E. 995, 162 N.
Y. 486; 8 C. J., page 196, section 327; 8 C. J., page 517,
section 726; *U. S. National Bank* v. *Floss*, 62 Pacific, 751;
*Hodgkins* v. *Moulton*, 100 Mass. 309; *Waterhouse* v. *Ken-
dall*, 65 Mass. 128.

We direct the attention of the court to the note 13 in 29
L. R. A. (N. S.) 380, et seq., in which there are a number
of opinions which we will not quote sustaining the position
of this brief. *Backus* v. *Spaulding*, v16 Mass. 418; *Siegel*
v. *Chicago Trust and Savings Bank*, 7 L. R. A. 537; *Jen-
nings* v. *Todd*, 24 S. W. 148; *Bank of Sampson* v. *Hatcher*,
66 S. E. 308; *Marlin* v. *Fitzgerald*, 120 N. W. 388; *Miller*
v. *Ottaway*, 45 N. W. 665; *Rubble* v. *Davis*, 51 N. W. 135;
*Bank of Commerce* v. *Barrett*, 95 Am. Dec. 384; *Splavillo*
v. *Patten*, 99 Am. Decisions, 358.

The crux of the whole case is whether or not the defend-
ant proved that there was notice to Despres, Bridges,
and Noel of fraud in November, 1917, when the notes were
purchased or whether they had guilty knowledge of and
complicity in the fraud. We submit that there is no proof
on this point at all.

The court, in *Vaughan* v. *Brant,* made the following wise observation: "The frequency with which such defenses as the one set up in this case are being pleaded reminds us that there is either a grave need of invoking the criminal statute of this state against persons who are prosecuting the execution of negotiable paper through fraudulent deceptions and misrepresentations or else there is gross negligence on the part of many who are executing such paper and sending it broadcast in the channels of commerce." *Vaughan* v. *Johnson,* 119 Pacific, 879.

We submit that the record did not present any evidence justifying the submission of the case to the jury; that the peremptory instruction should have been granted and that having failed to grant the peremptory instruction, the court should have set aside the verdict of the jury which followed the course that might be expected where a nonresident corporation sues a local man, and the case should therefore be reversed with explicit instructions as to the law.

*Chapman & Johnson,* for appellees.

A contract made by a foreign corporation which has not complied with the requirements of the statute, authorizing it to do business in the state, is void. Section 935 of the Mississippi Code of 1906, requires foreign corporations for profit incorporated under the laws of another state, now or hereafter doing business in Mississippi, to file with the secretary of state a copy of its character, or articles of incorporation, which charter, or articles of incorporation, or certificate, so to be filed, shall be duly certified by its president and secretary or other chief executive, and by attaching thereto its corporate seal, and the secretary of state, upon the payment of fees provided by this chapter, shall make a certificate that such corporation has filed a copy of its charter, or articles of incorporation, as required by this chapter, and any foreign corporation which shall not file a copy of its charter or articles or incorporation, as provided by this chapter, shall be

liable to a fine in the sum of nor less that one hundred dollars.

This section of the code was amended by the Laws of 1916, chapter 92, page 81, and makes a corporation failing to file a copy of its charter, or articles of incorporation liable to a fine of one hundred dollars. Now, therefore, under this law, the Partin Manufacturing Company, a foreign corporation, when it did business in the state of Mississippi, and took the notes of the Hough Drug Company and other parties, was violating the laws of the state, and failed to comply with this statute, and on failing to comply with this statute the Partin Manufacturing Company was guilty of a criminal offense, and liable to a fine of one hundred dollars thereby making the acts of the foreign corporation done in violation of the laws of this state void, and making the notes in the hands of the Partin Manufacturing Company void, and the notes being void in the hands of the Partin Manufacturing Company would therefore, be void in the hands of the transferee, Despres, Bridges and Noel, another foreign corporation. *Bohn* v. *Lowry*, 77 Miss. 427.

In the case of *Chattanooga National Building & Loan Association* v. *William H. Denson*, reported in the 47th Law Edition of the United States supreme court reports, at page 870, Justice McKENNA says that the question presented by the case was: "Did the loan made by petitioner, or the taking for security of the notes and mortgage, under the circumstances presented, constitute doing business in the state within the meaning of the constitution and laws of the state, within the meaning of the constitution and laws of the state of Alabama?" Referring to the case of *Dudley* v. *Collier*, 87 Alabama, 431, the court announced that a loan, or the borrowing of money, by or from a foreign corporation constitutes doing business within the state, and is an unlawful act, subjecting both agents and the company to a heavy penalty. The provisions of the statute prescribing penalties were considered, and their

effect was declared to be not only to punish offenders against the statute, but to render their contracts void.

Further in the case of *Firror* v. *New England Mortgage Securities Company,* 88 Alabama, 275, it was stated that the constitution prohibited the making of a single contract, or doing of a single act of business by a foreign corporation, in the exercise of a corporate function, as well as engaging in and carrying on its business generally. To the same effect are the cases of *Mullens* v. *American Free-Hold Land Mortgage Company,* 88 Alabama, 280, and *Gin* v. *New England Mortgage Securities Company,* 92 Alabama, 135, and *Sullivan* v. *Sullivan Timber Company,* 103 Alabama, 371; *Hogan* v. *Intertype Corporation,* reported in 206 S. W. 58.

## BAD FAITH ON THE PART OF THE PURCHASER OF A NOTE.

The plaintiff, Despres, Bridges & Noel, claimed to be innocent purchasers for value, under the Negotiable Instruments Law passed by our Legislature in 1916. In answer to this we say that the plaintiff was not an innocent purchaser for value in due course because it obtained the notes with the knowledge of such facts on the part of the Partin Manufacturing Company that its action in taking the instrument amounted to bad faith.

Section 56, page 363, reads as follows: "To constitute notice of an infirmity in the instrument, or defect in the title of the person negotating same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the notes amounted to bad faith.

We say under the negotiable instruments law passed by the legislature in 1916 that it was necessarily the intention of the legislature to render any paper growing out of a transaction where a nonresident corporation failed to comply with the laws of Mississippi before doing business in Mississippi a void note in the hands of the original taker of the note, and void in the hands of the assignee, because any paper growing out of a transaction

of this character is so defective that it could not fall into
the hands of an innocent purchaser and be enforced in the
courts of the state, because it would be against public
policy and because the defect in the note was inherent,
and therefore, a subsequent purchaser must take notice of
the defect. We refer you again to the case of *Hogan* v.
*Intertype Corporation,* reported in volume 206 of the South
Western Reporter, at page 58, and ask the court to espe-
cially read this case on that point.

Our courts have a line of decisions denying access to
the courts by one, who in the conduct of his business, in
making of a contract sued on, is violating the penal stat-
utes, or public policy of the state. *Wooten* v. *Miller,* 7 S.
& M. 385; *Deans* v. *McLendon,* 30 Miss. 343; *Bohn* v.
*Lowry,* 77 Miss. 424; *Orrell* v. *Mfg. Company,* 83 Miss.
824; *Young* v. *Insurance Company,* 91 Miss. 715; *Music
Company* v. *Haygood,* 108 Miss. 674.

## What Constitutes Notice or Bad Faith Generally.

It is a general principle running throughout all branches
and subjects of the law that one will be charged with no-
tice of the fact when he has information which should
have put him on inquiry, if by following up such informa-
tion with diligence and understanding, the truth could
have been ascertained.

## Delivery of Notes as Security for a Pre-existing Debt.

One who receives notes as security for a pre-existing
debt is not a purchaser for value, under the statute. *Mer-
chants & Farmers' Bank* v. *Bank of Winona,* 64 So. 210.
Defendant was hampered considerably in the defense of
this case, because George H. Partin and all his various
clerks and representatives had gone to parts unknown.
It was utterly impossible to locate any one of them in
order to take their depositions for the defense of the case.

The record shows that George H. Partin was indicted
by the federal grand jury in Memphis, Tennessee, but the
indictment was quashed and Partin left immediately and

Mr. Johnson, the postoffice Inspector, who made the investigation for the fraudulent use of the mail by the Partin Manufacturing Company testified that he was unable to locate George H. Partin, Manager of the Partin Manufacturing Company.

Ethridge, J., delivered the opinion of the court.

The appellant sued the appellee on five promissory notes bearing date September 14, 1917, due and payable as follows: One for two hundred dollars, due four months from date; one for two hundred and twenty-five dollars, due five months from date; one for two hundred dollars, due six months from date; one for two hundred dollars, due seven months from date; and one for two hundred dollars, due eight months from date. The first note reads as follows:

"$200.                   P. O., Indianola; State, Mississippi.
                                       "Date, Sept. 14—17.

"Four months after date for value received we promise to pay to the order of Partin Manufacturing Company, Incorporated, two hundred dollars ($200) at Indianola Bank.

                   "Hough Drug Co., by John Hough."

The other notes were identical in form and language, except that they were for 5, 6, 7, and 8 months, respectively, and in the case of the note due five months from date, the amount of the note was for two hundred and twenty-five dollars; the other notes all being for two hundred dollars each. Each of the said notes were indorsed as follows:

"Partin Manufacturing Co. Inc. C. H. Partin, Manager. Pay to the order of Foreman Bros. Banking Co. 'Chicago, Ill. Despres, Bridges & Noel. Pay to the order of Any Bank or Banker, Foreman Bros. Banking Co." 2--27 Chicago, Ill. 2--27. John Terborch, Cashier."

The defendant pleaded the general issue and two special pleas. By the first special plea it is alleged that plaintiff ought not to maintain its action because the debt sued

for in this case is not a legal, subsisting, and valid demand against the defendant, because the Partin Manufacturing Company, to which the notes here sued on were executed, was, at the time of the execution thereof and of the contraction of said debt, a foreign corporation, incorporated under the laws of the state of ———, and had not, at the time of the execution of said notes and of the contraction of the alleged debt, qualified to do business in the state of Mississippi, as required by chapter 24, Code 1906, and the amendments thereto; that the notes sued on were given to the Partin Manufacturing Company to represent and evidence the installment due under a certain contract executed concurrently therewith by and between the defendant and the Partin Manufacturing Company; that the Partin Manufacturing Company had its domicile in the city of ———, state of ———, and one of its principal offices in the city of Memphis, Tennessee, and that it was engaged in the states of Mississippi, Tennessee, Arkansas, and other states in increasing the business of mercantile concerns in the manner set forth in the contract; that said notes were given to the said corporation doing business in this state in violation of the laws and of the public policy thereof, and were void and uncollectible. A certificate was attached to this plea from the secretary of state of Mississippi, showing that the Partin Manufacturing Company had no charter in the state of Mississippi, and had not filed its foreign charter under the requirements of the law.

The second plea alleges that the notes sued on were executed to represent installments under a certain contract, and that under the terms of the said contract the Partin Manufacturing Company was to do and perform certain things therein stipulated, and that at the time of the execution of the contract it was the intent and purpose of the said Partin Manufacturing Company not to comply with any part of such contract, and that it had not performed the things, or any of them, specified in the contract; that the defendant was induced to sign said con-

tract by the Partin Manufacturing Company for the pur-
pose of fraudulently obtaining said notes; that the Partin
Manufacturing Company was engaged in the business of
obtaining such contracts and having executed to it notes
such as here sued on, and that after the execution of said
notes it would transfer and assign said notes to the plain-
tiff, so that the plaintiff could hold itself out as an in-
nocent purchaser for value without notice; that the plain-
tiff is not an innocent purchaser, and that the Partin
Manufacturing Company falsely and fraudulently induced
the defendant to enter into the said contract, and that the
Partin Manufacturing Company then and there knew it
would not perform the things it was called upon to do and
perform; that it intended to deceive the defendant, and
that the defendant, relying on the false representations
made to it, executed the notes sued on.

At the time of the execution of the notes here in suit,
the contract, made Exhibit A to the second special plea,
was entered into, under which the defendant placed an
order with the Partin Manufacturing Company for: First,
an automobile; second, a Grand Phonola talking machine;
third, a ladies' bracelet watch; fourth, a ladies' lavaliere
and chain; fifth, a ladies' locket and chain; sixth, one
forty-two-piece hand-decorated dinner set; also certain ad-
vertising matter; the things so ordered to be used as prizes
to purchasers from the defendant, under an understand-
ing that the Partin Manufacturing Company would in-
crease the defendant's sales and collections not less than
twelve thousand, five hundred dollars in twelve months,
under which agreement the Partin Manufacturing Com-
pany was to refund ten cents on every dollar the defend-
ant fell short of the twelve thousand, five hundred dollars
increase, and agreed to send its bond, indorsed by a bond-
ing company to the purchaser in the sum of one thousand,
two hundred and fifty dollars to guarantee this agreement.
The special pleas were replied to, and the case proceeded
to trial.

123 Miss.—39

It appears from the record that the Partin Manufacturing Company bought from the plaintiff at various times, jewelry, and that the notes in suit were transferred to the plaintiff before the same became due, and that credit was given the Partin Manufacturing Company in the same way that it would be given for cash, that is to say, the notes, according to the plaintiff, were bought unconditionally. The plaintiff testified that it bought the notes on the commercial rating of the Hough Drug Company, and that it had no knowledge of the agreements and contracts between the Partin Manufacturing Company and the Hough Drug Company, and that plaintiff did not know that the Partin Manufacturing Company did with the goods ordered from it. In the deposition of the sales manager for the plaintiff he offered to permit the defendant, or any reliable representative of the defendant, to examine the books and business of the plaintiff. On cross-interrogatories to the depositions the defendant was requested to attach correspondence between the plaintiff and the makers of the notes transferred by the Partin Manufacturing Company to the plaintiff, and also the correspondence between the Partin Manufacturing Company and the plaintiff, and many letters are contained in the record; but these do not pertain to the notes in suit, and do not, in our opinion, warrant the inference that the plaintiff was engaged fraudulently in buying notes acquired from the Partin Manufacturing Company, nor does it show, in our opinion, that they had any knowledge of any fraudulent dealings on the part of the Partin Manufacturing Company.

The defendant offered the evidence of an inspector of the Post Office Department, who was directed by the Post Office Department to investigate the Partin Manufacturing Company's method of doing business, and this agent testified that he made such an examination, and, among others, notified the plaintiff by letter, in the early part of 1917, that he was making such investigation, and requested information from them, and that he had a reply acknowledging his letter. He did not have the files containing this correspondence, and declined to produce them

or to secure them from the government. However, the letter was introduced in evidence, and shows on its face that it was written on March 23, 1918, instead of 1917. This letter reads as follows:

Memphis, Tenn., March. 23, 1918.

"Despres, Bridges & Noel, Chicago, Ill.

Please advise me whether a financial statement was ever furnished you by the Partin Manufacturing Company of Memphis, Tennessee, during the winter of 1916-17, or at any other time. If so please furnish it to me with the envelop in which it was received, for use in an investigation to determine whether this concern or its officers violated the postal laws in the conduct of its business.

"Any information concerning the business transactions with this concern will be appreciated, and any papers of value that would contain information on the subject, if furnished, will be returned when they have served their purpose.

"Please treat this inquiry as confidential and return with your reply.

"Very respectfully,

"[Signed] G. B. JOHNSON,

"Post Office Inspector."

The reply to the above letter reads as follows:

Chicago, March 25, 1918.

"Mr. G. B. Johnson, P. O. Inspector, Memphis, Tennessee—Dear Sir: Replying to your inquiry of the 23d instant with reference to Partin Manufacturing Company, beg to advise that we have at no time received a financial statement from them, nor any correspondence that might be in violation of the postal laws. Our business transactions merely represent sales of merchandise, for which we received in payment indorsed paper from their customers, and, inasmuch as they made no request for credit, we had no occasion to ask for a financial statement.

"Trusting this information will be of some service to you we remain,

"Yours very truly,

"[Signed] DESPRES, BRIDGES & NOEL."

The notes were acquired by the plaintiff on November 21, 1917. Subsequent to the assignment of the notes the Partin Manufacturing Company went into bankruptcy and discontinued business, being induced so to do, according to the Post Office Inspector, by an agreement with the Post Office Department that if it would discontinue business the fraud order would not be issued against the Partin Manufacturing Company. None of the facts or correspondence which would indicate fraud were introduced in evidence, but the attorneys for the Partin Manufacturing Company and the government reached an agreement, and the most that could be said as to any fraud of the kind charged against the Partin Manufacturing Company in its business, other than the transaction with the defendant, is that in the opinion of the Inspector of the department the business of that corporation was fraudulent. Clearly this is not proof of fraud.

The Post Office Inspector testified, further, that during March or April, 1918, he went to the office of the plaintiff to investigate its connection with the Partin Manufacturing Company, and that some of the officers of the plaintiff admitted that they had some trouble in collecting previous notes assigned to them by the Partin Manufacturing Company, and that they knew something of the business conducted by the Parti Manufacturing Company. This conversation is very indefinite as to when or under what circumstances or as to what notes this trouble and knowledges related. We think it is wholly insufficient to warrant submitting to the jury as evidence of fraud in the present transaction.

The defendant was introduced, and testified as to making delivery of the notes in question, and that the Partin Manufacturing Company supplied a portion of the goods ordered, but failed to furnish other goods, and failed to send a skilled advertising manager which the Partin Manufacturing Company agreed to furnish under its contract. He testified that he went to Memphis on several occasions, and urged the Partin Manufacturing Company to comply

with its contract, and that he was suing the bonding company in Ohio on the bond given by the Partin Manufacturing Company to guarantee the fulfillment of its contract. He further testified that when the first note was sent for collection that the notice to him did not show the note to be owned by the plaintiff, but that the notice indicated that the Partin Manufacturing Company owned the note.

The officers of the bank at Indianola, Miss., were not examined, nor was there any evidence to show that the note was sent by the Partin Manufacturing Company for collection. It does appear that the defendant wrote the Partin Manufacturing Company that the note was presented at the wrong bank, and that the Partin Manufacturing Company wrote that future notes would be sent to the right bank, and that the note was sent to the wrong bank by oversight. There is no showing that the plaintiff had any knowledge of this correspondence, and the plaintiff's proof is clear that the notes were sent by the plaintiff through its bank for collection. We think there was no sufficient showing of any knowledge on the part of the plaintiff of any fraud on the part of the Partin Manufacturing Company in procuring the notes, nor is there any showing sufficient to warrant the conclusion that the plaintiff had any knowledge of the agreements between the Partin Manufacturing Company and the defendant.

The court below refused a peremptory instruction for both plaintiff and defendant, and only one granted instruction appears in the record, which is for the plaintiff, and reads as follows:

"The court instructs the jury that if they believe from the evidence that the plaintiff was an innocent purchaser of the notes in question for value, before maturity, they will find for the plaintiff for the face of said notes, six per cent. interest, from maturity, and protest fees."

There was a verdict for the defendant and a motion for a new trial, which was overruled.

The present suit is governed by the Negotiable Instrument Act, being chapter 244, Laws 1916, Hemingway Code,

section 2579 et seq. The Negotiable Instrument Act is entirely different in its effect upon transactions of this kind from the provisions of our anti-commercial statute (section 4001, Code 1906; Hemingway Code, section 2564), which has heretofore governed the court in its judgment in cases of this kind. The notes in question were executed and delivered to the Partin Manufacturing Company by the defendant, and on their face carry no suggestion of any other agreement or understanding, and comply with the requirements of the Negotiable Instrument Act, and it is provided in section 16 of this act:

"But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proven."

By section 24 of the act it is provided: "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

By section 25 of the act it is provided: "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time."

By section 26 of the act it is provided: "Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

By section 28 of the act it is provided: "Absence or failure of consideration is matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense pro tanto, whether the failure is an ascertained and liquidated amount or otherwise."

By section 60 of the act it is provided: "The maker of a negotiable instrument by making it engages that he will pay it according to its tenor, and admits the existence of the payee and his then capacity to indorse."

We think this last section eliminates from consideration the plea that the note was void because the Partin Manufacturing Company had not filed its charter in this state. The several sections above quoted, when applied to the evidence in this case, make the defendant liable to the plaintiff. The testimony for the plaintiff is clear and unequivocal, and the proof offered by the defendant is insufficient to require the submission of the case to the jury, and the refusal to give a peremptory instruction for the plaintiff was error. As there is no evidence to prove fraud, and no evidence sufficient to prove notice on the part of the plaintiff of any infirmities in the papers prior to the time of their acquirement, the judgment of the lower court will be reversed, and judgment will be entered here for the plaintiff.

Reversed and judgment here for the appellant.

*Reversed.*