THE STATE EX REL. F. L. STEVENS v. HENRY L. ARNOLD ET AL., Judges of Kansas City Court of Appeals.—30 S. W. (2d) 1015.

Division One, September 4, 1930.

*G. A. Kenderdine* and *Woodruff & Woodruff* for relator.

*H. J. Bain* for respondents.

RAGLAND, J.—In this proceeding relator seeks to have quashed, on the ground of conflict of decision, the opinion and judgment of the Kansas City Court of Appeals in the case of F. L. Stevens, appellant, v. D. K. Bryant, respondent, lately pending before that court on appeal from the Circuit Court of Grundy County. The ruling complained of and the facts constituting the basis of the ruling sufficiently appear from the following portions of the opinion:

"This is an action by the assignee of six monthly promissory notes executed by defendant, given in payment for merchandise ordered from the original payee. The petition is in six counts, one for each note, with an additional prayer in each count for $25 attorney's fee on the note involved. Defendant's answer was a general denial, and the further allegation that the purported notes were procured from him by false and fraudulent representations, that the merchandise for which they were given was not as represented and that he was unable to dispose of same, and that plaintiff was not a holder in due course. The reply was a general denial.

"At the trial on June 8, 1928, the jury returned a verdict for the defendant. Plaintiff filed motions for a new trial and for a judgment *non obstante veredicto*, which the court overruled, and then entered judgment for defendant in accordance with the verdict, from which judgment plaintiff brings this appeal.

"The evidence shows that defendant was in July, 1926, and still is, in the business of handling radios in Trenton, Grundy County,

Missouri. On July 25, 1926, he was called upon by one Cummings, representing a manufacturing company or partnership, of Iowa City, Iowa, who solicited him to purchase some of the radios put out by his company, and to take the agency for same. . . . Defendant finally signed a contract calling for a first delivery to him of three radio sets, at the trade discount rate, or $288.33 net, with an agreement for a three-year agency by defendant on terms set forth. At the same time defendant signed the six notes in question, attached by perforation to the contract, being five notes for $50 each, due in two, three, four, five and six months, respectively, and one for $38.33 due in seven months. They did not call for the payment of interest, but each one provided that 'in case of default in payment, I agree to pay payee's reasonable attorney fees.' . . .

"Respondent's evidence convincingly shows, and the jury was justified in finding, that the radios received were greatly inferior to what had been represented to him; so much so that they were practically worthless and unsalable, and in no respect approached in make-up, in external or internal appearance, in their 'tuning-in' effect or reproducing qualities, or in their long distance receiving capacity, what the agent's representations justifiably led respondent to believe he was purchasing. . . .

"The evidence further showed that plaintiff was a practicing lawyer of Iowa City, and also somewhat extensively handled investments for himself and clients, in the nature of notes, mortgages, tax titles and general investments. Since May, 1926, and up to the date of the trial, he had purchased approximately $250,000 in notes from the manufacturing company in question, of which about $100,000 was within the last year; that on September 7, 1926, he had purchased from them at their request, a bunch of notes of a total face value of $4,973.33, for the sum of $4,500; that the notes in suit were among them. Witness Loveland, of the company, testified as to this sale: 'Of course he paid for each note its proportionate share of the whole.' Plaintiff denied any business relationship with the company except in the purchase of notes, and denied knowledge of any just offset or counterclaim which defendant might have against him, growing out of this or any other transaction; that he knew when he purchased these notes from the company that 'they had been given to them for merchandise of some sort, but I didn't know what.' . . .

"His strongest statement (introduced by two depositions) is that he bought the notes on September 7th at a discount, that at the time of the deposition he did not know of any just offset or claim which Mr. Bryant might have against him growing out of this or any other transaction; that at the time he bought the notes he did not know of any difference between Mr. Bryant and the Brenard Manufacturing Company that might lead to difficulty in the collection of these

notes; that he did not have any reason to believe that there might be any difficulty in the collection of the notes or he would not have purchased them. . . .

"Appellant alleges four assignments of error. Passing for the moment the first of these, as to the court's refusal of plaintiff's peremptory instruction for a verdict, and to enter judgment *non obstante veredicto,* his second is as to the giving of defendant's instructions numbered 1 and 6, as follows:

" '1. The court instructs the jury that when D. K. Bryant purchased the radios on the representation of the salesman, he had a right to inspect them and try them out when they arrived to see if they were in accordance with the specifications. In this connection, if you believe and find that said radio sets did not comply with the specifications and the defendant's signature to the notes sued on was obtained by fraud as defined in these instructions, then the burden is on plaintiff to show that he is a holder of said notes in due course.

" '6. The court instructs the jury that if you believe and find from the evidence that the notes sued on by plaintiff were procured by fraud as defined herein, then plaintiff's title to said notes is defective. And if you further believe and find that after said notes were so procured by the Brenard Manufacturing Company, they negotiated them to plaintiff, F. L. Stevens, who is now the holder of said notes, then the burden is on the holder, F. L. Stevens, to prove that he acquired the title to said notes as a holder in due course. And in this connection the court further instructs you that before F. L. Stevens is considered to be a holder in due course the burden is on him to establish that he took the notes in good faith and for value. And if you further believe and find that the said F. L. Stevens has failed to establish that he paid value for any one or all of the six notes sued on in this case then as to any such notes he is not entitled to claim he is a holder in due course.'

"Defendant contends that these instructions are at variance with the ruling of the Supreme Court in the case of Downs v. Horton, 287 Mo. 414, 230 S. W. 103, in which the law on the question of the burden of proof under Section 845, Revised Statutes 1919, is very thoroughly digested in an opinion by Judge RAGLAND. We understand the conclusion of the court in that case to be that in such cases proof of the defective title of the original payee throws the burden on the assignee of offering prima-facie evidence of the bona-fide character of his own acquisition of the note; that when he has done this he has overcome the presumption against him raised by proof of the defect in title of his assignor; that the normal burden then returns to him who seeks to impeach the good faith of the transaction to offer proof of his contention.

"We do not find that the instructions in this case are inconsistent with that ruling. Instruction numbered 1 follows the language of the statute almost verbatim in stating that if the jury find that the notes were obtained by fraud then 'the burden is on plaintiff to show that he is a holder of said notes in due course.'

"Instruction numbered 6 is similar in its first sentence, but goes further by requiring, as proof of being a holder in due course, that the notes were taken in good faith and for value. Appellant claims that there was no evidence controverting that of his own witness that he paid value, and that it was therefore error to include that item. The evidence on the question of value paid was involved in that relating to the good faith of the whole transaction, and that element was not improperly included in the instruction. . . .

"No error being found in the case, on the record as we find it before us, the judgment should be affirmed."

As outlined by the opinion the case is simply this: The holder (prima-facie a holder in due course) sues on six negotiable promissory notes. The defendant in his answer sets up as a defense that the title of the person who negotiated the instruments was defective because he obtained the instruments by fraud and that plaintiff to whom they were negotiated had actual knowledge of the defect, or knowledge of such facts that his action in taking the notes amounted to bad faith.

With respect to this affirmative defense the defendant at the beginning of the trial had both the burden of evidence and the burden of proof. After he had offered evidence tending to show fraud in the inception of the notes the burden of evidence shifted to plaintiff. Thereupon it was incumbent upon plaintiff to disclose all the facts and circumstances attending the transfer of the instruments; unless this evidence on his part disclosed that he had knowledge of the fraud, or acted in bad faith, the burden of evidence then shifted back to the defendant. Notwithstanding the repeated shiftings of the burden of evidence, the burden of proof remained with defendant throughout the trial. [Downs v. Horton, supra.]

The shifting of the burden of evidence is governed by rules of procedure which are designed solely for the guidance of the court: with respect to their observance, operation or effect, the jury has no function to perform. [Griffith v. Continental Casualty Co., 299 Mo. 426, 253 S. W. 1043.]

Under Section 845, Revised Statutes 1919, the burden on the holder of a negotiable instrument to prove that he acquired the title as holder in due course is the burden of evidence and not the burden of proof: the section itself is simply a statutory recognition of a rule of procedural law that existed long prior to its enactment. [Downs v. Horton, supra.]

38

Instructions numbers 1 and 6 set out in the opinion, erroneously assuming that the burden placed upon the holder under said Section 845 is the burden of proof, instructed the jury that "the burden is on plaintiff to show that he is the holder of said notes in due course," and "that he took the notes in good faith and for value." On the contrary the burden of establishing those facts devolved upon defendant, unless such facts appeared from the evidence given on the part of plaintiff. The giving of the instructions was prejudicial error necessitating a reversal of the judgment: the ruling of the Court of Appeals in approving them is plainly in conflict with the decisions of this court in the cases above cited.

The opinion and judgment of the Court of Appeals are quashed. All concur.