LOCAL FINANCE COMPANY, a corporation, Plaintiff-Appellant,

v.

Carl D. CHARLTON and Jewell D. Charlton, Defendants-Respondents.

No. 7424.

Springfield Court of Appeals.

Missouri.

March 26, 1956.

Herbert Douglas, Neosho, for plaintiff-appellant.

A. R. Dunn, Neosho, for defendants-respondents.

STONE, Judge.

In this action on a negotiable promissory note dated January 30, 1953, in the original principal sum of $275.58 payable in eighteen monthly installments of $15.31 each, the first of which was due March 15, 1953, executed by defendants, Carl D. and Jewell D. Charlton, who are husband and wife, payable to the order of Compact Sales Co., and endorsed without recourse by that payee, plaintiff, a finance company with its business office in Joplin, Missouri, who asserts that it is a holder in due course of the note [Section 401.052], appeals from the adverse judgment entered on a jury verdict for defendants. (All statutory references herein are to RSMo 1949, V.A.M.S.)

In their answer, defendants pleaded *fraud in the factum*, i. e., that their signatures were obtained "by trick, artifice and fraud" on the part of one C. A. Stubblefield (hereinafter referred to as Stubblefield), an agent of Howard Stubblefield, who did business under the trade name of Compact Sales Co. (hereinafter referred to as Compact), in that Stubblefield "asked them to sign what he falsely stated and represented to them to be (and what they believed to be) a receipt" for a vacuum cleaner but which was, in fact, the note (and chattel mortgage) in suit. Defendants further pleaded *fraud in the inducement*,

i. e., that Stubblefield falsely stated that Compact "was seeking a person" in the area of defendants' home on R.F.D. 1, Neosho, Missouri, to make appointments for representatives of Compact to demonstrate vacuum cleaners in other homes under an arrangement known (and hereinafter referred to) as a "club plan," whereby Compact would pay to the person making such appointments $25 for each vacuum cleaner sold as a result thereof; that "only one person would be selected to make appointments" within an area extending "from * * Granby in Newton County to Southwest City in McDonald County"; and that, relying upon such false representations, defendant, Jewell D. Charlton, was induced to accept "said position" and to sign a "club plan." [1] Defendants denied that plaintiff was a holder in due course and asserted that it took the note with full knowledge of "the scheme and methods" used to defraud defendants.

The evidence upon trial tended to support the averments of defendants' answer. Stubblefield, coming to defendants' home at night, "wanted us to act as agent for him and make appointments for him to sell vacuum sweepers to other people and we were to get paid ($25) for each sweeper he sold someone"—"he said we could have the territory from Granby to Southwest City, be the only ones through there to make appointments." After admittedly having read it in full, Mrs. Charlton signed a "club plan," a single-spaced typewritten sheet which stated the "conditions for acceptance as club member" and the "acceptance" by Compact but included no reference to territory. Then Stubblefield said that "he would like to leave a vacuum sweeper in our home since we were going to be an agent for him and he would like for us to sign a receipt showing he had left it in good hands." Stubblefield "had a clip board with the papers on it and the club plan was on top and we signed that and under it was the two lines of the receipt

---

1. For definitions of fraud in the factum and fraud in the inducement, see 17 Words and Phrases (Perm.Ed.); and, for Missouri cases recognizing the distinction between them, see Watson v. Bugg, Mo. (banc), 280 S.W.2d 67, 69, and Brownlee-Moore Banking Co. v. Henderson, 345 Mo. 1203, 139 S.W.2d 483.

and we signed that." When asked why she read the "club plan" but not the "receipt," her reply was "well, he was getting ready to leave and said he was in a hurry and· would we sign those papers and the receipt and club plan"; but, when plaintiff's counsel immediately put the direct inquiry as to whether Stubblefield "gave you plenty of time to read them if· you wanted to read them," Mrs. Charlton conceded "I guess I ·could have." Mrs. Charlton subsequently learned that she was not "sole agent" for ·Compact; and, although she made some appointments for demonstrations, she "didn't turn them in—I told them what was up."

Plaintiff purchased the Charlton note for $225 on February 5, 1953, and "soon after" defendants "got a card from (plaintiff) saying that they had purchased a note against us for a vacuum sweeper," to which Mrs. Charlton responded by letter dated February 20, 1953, *"when we bought our Compact cleaner we understood from the salesman that the Co. took care of the mortgage—we did not intend to get mixed up with any Finance Co. when we bought it."* At the trial, Mrs. Charlton insisted that Stubblefield had said nothing about sale of a vacuum cleaner to defendants and that they had not purchased one. Strangely and perhaps significantly, Mr. Charlton, who also signed the "receipt" (actually the note), did not testify.

Plaintiff, asserting that, as a holder in due course, it holds the Charlton note free from the defenses of fraud in the factum and fraud in the inducement interposed by defendants [Section 401.057], complains on appeal that the trial court erred in refusing to direct a verdict for plaintiff at the close of all of the evidence. The note in suit is complete and regular on its face, and plaintiff's evidence that it purchased the note for value and before the first monthly installment became due is undisputed. But, whether at the time the note was negotiated to plaintiff, i. e., on February 5, 1953, it "had no notice of any infirmity in the in-

strument or defect in the title of the person negotiating it" [Section 401.052], and thus whether plaintiff, in fact, became .a holder in due course, is a sharply-contested issue.

Section 401.056, which is a mere codification of prior case law [Downs v. Horton, Mo.App., 209 S.W. 595, 599(11), affirmed 287 Mo. 414, 230 S.W. 103, 106], provides that "(t)o constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." In oft-quoted language, our Supreme Court held in Jennings v. Todd, 118 Mo. 296, 24 S.W. 148, 149–150, that, although· "(i)n general one will be charged with notice of a fact who has information which should put him upon inquiry if, by following up such information with diligence and understanding, the truth could have been ascertained", it is "well settled in this state, however, that the doctrine of notice, as it affects the good faith of transactions generally, does not apply to negotiable commercial paper." And, in language as frequently quoted with unqualified approbation, it was said in the earlier case of Hamilton v. Marks, 63 Mo. 167, 178, that "both upon principle and authority, and from the experience of jurists and commercial men, and the interests of the affairs of business life, it is safe to say that the liberal doctrine which promotes the free circulation of negotiable instruments, is the best, and that the good faith of the transaction should be the decisive test of the holder's rights." [2] It was firmly settled long ago, beyond room for argument now, that the purchaser of a negotiable promissory note procured by fraud may not be charged with notice of an infirmity or defect by showing that he was negligent in taking the instrument or that he acquired it with knowledge of facts and

2. See also Dull v. Johnson, Mo.App., 106 S.W.2d 504, 508(4, 6); Hunt v. Dean, Mo. App., 72 S.W.2d 831, 832; Cass Avenue Bank v. Greenwald, 224 Mo.App. 344, 29 S.W.2d 209, 211; Morehead v. Cummins, 207 Mo.App. 64, 230 S.W. 656, 659(2).

circumstances that would arouse the suspicion of an ordinarily prudent person,[3] and that nothing short of actual knowledge or bad faith will defeat the title of such purchaser.[4] Of course, actual knowledge may be inferred from the facts and circumstances surrounding acquisition of the note [5] but not "from things that would merely put a prudent man on inquiry."[6]

The record in the case at bar indicates (although not clearly and satisfactorily) that salesmen for Compact appointed, under the same "club plan," a number of "sole agents" in the same neighborhood, and that others signed "receipts" (actually negotiable promissory notes) under similar circumstances. However, a meticulous search of the transcript on appeal reveals no evidence from which plaintiff might have been charged as of February 5, 1953, the date of purchase of the Charlton note, with knowledge of Compact's transactions with, or fraudulent procurement of notes from, any of the other "sole agents" appointed under the "club plan," *excepting only* Mr. and Mrs. Robert Caldwell of Neosho. On December 17, 1952, one Britton, another salesman for Compact, had called at the Caldwell home; and, under circumstances quite similar to those related by defendants herein, Mrs. Caldwell then had signed a "club plan" and she and her husband had signed a "receipt" for a vacuum cleaner. When the Caldwells received, some four to seven days later, a notice from plaintiff "saying that we owed" $245, they immediately went to plaintiff's office in Joplin and told someone (Mrs. Caldwell

thought Whitehead—her husband said "the manager over there, assistant manager, whoever it was I was talking to") "all about it."

Although, *on March 21, 1953,* plaintiff "sold back" to Compact the Caldwell note and "the Gates note" (concerning which there was no other evidence), both of which originally had been endorsed by Compact without recourse, there was no denial of Whitehead's further testimony that he had "fifty or seventy-five accounts" which he did not "sell back" to Compact, and that plaintiff had done business with Compact for "about a year and a half" before plaintiff quit "right after this (Charlton) deal * came up." Admittedly, *defendants* had not communicated with plaintiff prior to February 5, 1953, and obviously plaintiff *then* could not have acted upon, or been charged with, information *thereafter* acquired. Brown v. Hoffelmeyer, 74 Mo. App. 385, 393. Of course, the fact that plaintiff took the Charlton note endorsed without recourse is not a badge of guilty knowledge of fraud. Downs v. Horton, supra, 209 S.W. loc. cit. 598(5), affirmed 230 S.W. loc. cit. 105; Eastern Acceptance Corp. v. Kavlick, 10 N.J.Super. 253, 77 A.2d 49, 50(1).

"(A)s a general rule, knowledge of the assignor's crookedness in business matters does not charge the purchaser (of a negotiable instrument) with the duty of making inquiry." 10 C.J.S., Bills and Notes, § 335, pp. 836, 837. Careful consideration of numerous cases from other juris-

3. Morgan v. Mulcahey, Mo.App., 298 S.W. 242, 245(6); Downs v. Horton, Mo.App., 209 S.W. 595, 599(12), affirmed 287 Mo. 414, 230 S.W. 103, 106; First Nat. Bank v. Leeper, 121 Mo.App. 688, 97 S.W. 636, 638(3); Wilson v. Riddler, 92 Mo.App. 335, 339(1).

4. Aetna Inv. Corporation v. Barnes, Mo. App., 52 S.W.2d 221, 223; Russell v. Wyant, 214 Mo.App. 377, 253 S.W. 790, 795 (8); Reitherman v. Wheeler, Mo.App., 247 S.W. 222, 223(3); First State Bank of Corwith v. Hammond, 104 Mo.App. 403, 79 S.W. 493, 495(3).

5. Taylor v. Atlas Security Co., 213 Mo. App. 282, 249 S.W. 746, 748(1); Central Bank, Columbia, Mo. v. Lyda, Mo.App., 191 S.W. 245, 249(4); National Bank of Rolla v. Romine, 136 Mo.App. 57, 117 S.W. 104, 106.

6. Commerce Trust Co. v. McGirk State Bank, 222 Mo.App. 8, 300 S.W. 526, 527 (4); Republic Nat. Bank of St. Louis v. Interstate Producing Corporation, 221 Mo.App. 568, 282 S.W. 1033, 1037(4); Bank of Hale v. Linneman, Mo.App., 235 S.W. 178, 181(3).

dictions,[7] in which this principle has been approved, and re-examination of our Missouri holdings, supra, discussing "what constitutes notice of infirmity" [Section 401.-056], impel the conclusion, as a matter of law, that upon the record presented, which we must take as it comes to us [Bennett v. Wood, Mo., 239 S.W.2d 325, 327(2); McNabb v. Payne, Mo.App., 280 S.W.2d 864, 866(6)], plaintiff's status as a holder in due course of the note in suit was not destroyed by the testimony of the Caldwells, standing alone, that "around Christmas," 1952, they told someone in plaintiff's office "all about" the alleged fraud in procurement of their note, that being the *only* evidence in the transcript tending to charge plaintiff, as of February 5, 1953, with knowledge of Compact's alleged fraudulent operations.

█ Defendants' evidence tending to show that Compact's title to the note in suit was defective raised a presumption, "in lieu of the fact," that plaintiff had knowledge thereof [Downs v. Horton, 287 Mo. 414, 230 S.W. 103, 109] and cast on plaintiff the *burden of evidence* to show that it acquired title as a holder in due course. Section 401.059; Feigenbaum v. Bockrath, Mo.App., 191 S.W.2d 999, 1002(4). When plaintiff's evidence, disclosing facts within its knowledge regarding its acquisition of the note, showed its good faith and lack of notice, the presumption arising from defendants' proof of Compact's fraud took flight and the *burden of evidence* shifted back to defendants, upon whom the *burden of proof* to establish that plaintiff had notice of infirmity rested and remained throughout the case.[8] Since, as we have heretofore pointed out, defendants adduced no substantial evidence tending to show plaintiff's actual knowledge or bad faith [Section 401.056], plaintiff's motion for a directed verdict at the close of all of the evidence should have been sustained.[9]

█ In the ordinary action on a note, reversal and remand with directions to enter judgment for plaintiff would follow. But, although the judgment for defendants cannot be sustained on the competent evidence before us, the record suggests that the facts pertaining to plaintiff's knowledge of the alleged fraudulent operations of Compact may not have been developed fully, and that, upon retrial, defendants may be able to show that, prior to purchase of the note in suit on February 5, 1953, plaintiff had notice of the alleged fraudulent procurement of a sufficient number of other notes purchased from Compact (in addition to the Caldwell note) that a jury issue may be made as to whether plaintiff took the note in suit with "knowledge of such facts that (its) action in taking the instrument amounted to bad faith."[10] Section 401.056. In any event, we believe that our discre-

---

7. See particularly Standard Acceptance Corporation v. Chapin, 277 Mass. 278, 178 N.E. 538; Setzer & Russell v. Deal, 135 N.C. 428, 47 S.E. 466; Despres, Bridges & Noel v. Hough Drug Co., 123 Miss. 598, 86 So. 359; Silberschmidt v. Moran, 79 Cal.App. 533, 250 P. 205, 207 (4). Consult also Vaughan v. Brandt, 21 Idaho 628, 123 P. 591; Manufacturers & Traders Trust Co. v. Sapowitch, 296 N.Y. 226, 72 N.E.2d 166, 169; Smith v. Armstrong, 85 Cal.App. 624, 631, 260 P. 347, 350.

8. State ex rel. Strohfeld v. Cox, 325 Mo. 901, 30 S.W.2d 462, 464–465; State ex rel. Stevens v. Arnold, 326 Mo. 32, 30 S.W.2d 1015; Downs v. Horton, 287 Mo. 414, 230 S.W. 103, 108–109.

9. *In addition to authorities cited supra,* see Smith v. G. F. C. Corp., Mo.App., 255 S.W.2d 69; National Bond & Investment Co. v. Miller, Mo.App., 76 S.W.2d 703; Cox v. Higdon, Mo.App., 67 S.W.2d 547; C. I. T. Corporation v. Byrnes, Mo.App., 38 S.W.2d 750; Newton County Bank v. Cole, Mo.App., 282 S.W. 466; Farmers' State Bank v. Barnes, Mo.App., 276 S.W. 93.

10. The instant appeal does not call for a determination as to the *minimum number* of fraudulently procured notes, concerning which notice to plaintiff prior to February 5, 1953, should be shown to make a submissible case as to plaintiff's bad faith in taking the note in suit; but, interested counsel may desire to examine on this point Salem Trading & Finance Co. v. Peterson, 48 R.I. 170, 136 A. 445, where, in an action on a trade acceptance purchased by plaintiff, a jury question as to plain-

tion should be exercised in the interest of substantial justice by reversal and remand for retrial.[11]

Since the case is to be retried, it becomes appropriate for us to express our views on the defense of *fraud in the factum* predicated on defendants' assertion that they signed the note in reliance on the fraudulent representation of Stubblefield that it was a "receipt" for a vacuum cleaner. Although their exact ages are not shown, it is apparent that defendants are neither elderly nor infirm. There is no suggestion that Mr. Charlton, employed at the Neosho plant of Pet Milk Company, is illiterate; and, the record affirmatively shows that his wife, employed at a drive-in restaurant, can read and write, for she admittedly read in full the single-spaced typewritten sheet referred to as the "club plan" and her well-composed letter of February 20, 1953, to plaintiff was written in ink in a flowing hand so neat and legible that it might well be the envy of every member of this court. Although Stubblefield's suave and extravagant assurances of the quick and easy financial rewards to accrue from Mrs. Charlton's appointment under the "club plan" may have temporarily disarmed defendants of all suspicion and engendered an unwarranted confidence in this utter stranger, the fact remains that defendants intended to sign the paper upon which their signatures appear. Thus, our case is *not* one where parties, having read the instrument presented to them, have signed another and different instrument fraudulently substituted by deft

manipulation,[12] nor where persons, unable to protect their own interests by reason of illiteracy, infirmity or impairment of sight, have been deceived by fraudulent representations as to the character of the paper presented [13] or by misreading of the paper,[14] nor where one's request to read an instrument just signed has been denied; [15] but, defendants' plaint in the instant suit is simply that the paper, which stranger Stubblefield blandly denominated a receipt, actually was a note.

That "(t)he * law affords to every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly or a careless indifference to the ordinary and accessible means of information" [2 Kent's Comm. 485] is a timeless truth as compelling today [Dickinson v. Bankers Life & Casualty Co., Mo.App., 283 S.W.2d 658, 663(7)] as when so graphically expressed by Chancellor Kent more than one hundred twenty-five years ago. See also Dyrssen v. Union Electric Light & Power Co., 317 Mo. 221, 295 S.W. 116, 118. Our courts frequently have proclaimed that "(i)t is trite law that a person is expected to learn what an instrument contains before he signs it, either by reading or having it read, or by having its contents stated by some one on whom he has a right to rely, the circumstances considered, and provided either method of obtaining the information is available without too great inconvenience." [16] Passing the obvious import of

tiff's bad faith was made by showing that *twelve* to *fifteen* acceptances purchased from the same firm had been repudiated, *"several"* prior to acquisition of the acceptance in suit. Consult also Bergheim v. McRae, 190 Minn. 571, 252 N.W. 833.

11. Kramer v. Johnson, 361 Mo. 1085, 238 S.W.2d 416, 423(13). Cf. In re City of Kinloch, 362 Mo. 434, 242 S.W. 2d 59, 66(25); Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889, 902(28); Byrne v. Prudential Ins. Co. of America, Mo., 88 S.W.2d 344, 347(4); Bradley v. Wabash R. Co., Mo.App., 227 S.W.2d 93, 95 (4); Masters v. Sun Mfg. Co., 237 Mo. App. 240, 165 S.W.2d 701, 704(10, 11).

12. Gate City Nat. Bank v. Bunton, 316 Mo. 1338, 296 S.W. 375; South Side Buick Auto Co. v. Bejach, Mo.App., 44 S.W.2d 870, 872.

13. J. R. Watkins Co. v. Thompson, 230 Mo.App. 482, 93 S.W.2d 1100, 1104; Reddick v. Union Electric Light & Power Co., 210 Mo.App. 260, 243 S.W. 382.

14. Kalamazoo Nat. Bank v. Clark, 52 Mo. App. 593; Atkinson v. Kelly, Mo.App., 214 S.W. 276, 280(1).

15. Edmund S. Mills Corp. v. Stinebaker, Mo.App., 67 S.W.2d 821.

16. Anderson v. Meyer Bros. Drug Co., 149 Mo.App. 554, 573, 130 S.W. 829, 835;

Mrs. Charlton's letter of February 20, 1953, to plaintiff, we have searched the record in vain for any material fact or circumstance which would distinguish this case from those in which our courts repeatedly have imposed liability on makers who carelessly and negligently have signed notes in professed reliance on the false representations of others that the papers were receipts [17] or contracts (or duplicate copies thereof).[18] There was no relationship of trust or confidence between defendants and Stubblefield who came to them in the night as a complete stranger.[19] That he was in a hurry to leave was not a unique factor;[20] and, *even if* Stubblefield had kept his hand on the clipboard while defendants signed (and there is not a word of testimony that he did), this would not have differentiated the instant case from others in which a showing of similar tactics has not served to relieve from liability.[21] On defendants' own evidence, we think it clear that there is no basis in the instant case for submission of the defense of *fraud in the factum*.

The case is reversed and remanded for retrial, in order that defendants may have an opportunity to develop and present all available evidence tending to demonstrate that plaintiff took the note in bad faith

[Section 401.056] and thus subject to the defense of *fraud in the inducement*.

McDOWELL, P. J., concurs.

RUARK, J., not sitting.

Hall v. Kansas City Southern Ry. Co., Mo.App., 209 S.W. 582, 584; Woosley v. Wells, Mo., 281 S.W. 695, 701; Zeilman v. Central Mut. Ins. Ass'n, 224 Mo. App. 145, 22 S.W.2d 88, 92.

17. Shirts v. Overjohn, 60 Mo. 305; Hellmann v. Krumsick, Mo.App., 51 S.W.2d 189; O'Shea v. Lehr, 182 Mo.App. 676, 165 S.W. 837, 840–841.

18. First Nat. Bank v. Hall, 129 Mo.App. 286, 108 S.W. 633; New Madrid Banking Co. v. Poplin, 129 Mo.App. 121, 108 S.W. 115; Cowgill v. Petifish, 51 Mo. App. 264; First Nat. Bank of Cameron v. Stanley, 46 Mo.App. 440, 445. See also J. R. Watkins Co. v. Lankford, 363 Mo. 1046, 256 S.W.2d 788, 790, and J. R. Watkins Co. v. Oldfield, 351 Mo. 894, 174 S.W.2d 142, 143, where *guaranty agreements* were signed in the belief that they were *recommendations*, and State ex rel. and to Use of Dunklin

County v. McKay, 325 Mo. 1075, 30 S. W.2d 83, 93, where a *bond* was signed in the belief that it was a *financial statement*.

19. Hellmann v. Krumsick, supra; United Breeders Co. v. Wright, 134 Mo.App. 717, 115 S.W. 470; First Nat. Bank v. Hall, supra; Cowgill v. Petifish, supra. Cf. Dyrssen v. Union Electric Light & Power Co., 317 Mo. 221, 295 S.W. 116. Contrast Gideon v. Teed, 216 Mo.App. 315, 264 S.W. 70.

20. J. R. Watkins Co. v. Oldfield, supra, 174 S.W.2d loc. cit. 143; Dickinson v. Bankers Life & Casualty Co., Mo.App., 283 S.W.2d 658, 660; O'Shea v. Lehr, supra, 165 S.W. loc. cit. 840; United Breeders Co. v. Wright, supra.

21. Hellmann v. Krumsick, supra, 51 S.W. 2d loc. cit. 192–194; United Breeders Co. v. Wright, supra.