HUGH MEREDITH, Appellant, v. T. C. PEMBERTON, Respondent.

Kansas City Court of Appeals, April 21, 1913.

1. **BILLS AND NOTES: Indorser: Acceptance.** The plaintiff sued to recover on a promissory note as the indorser of the defendant. Defendant was the payee of the ,note of which one Boone was the maker. Before maturity, the defendant sold and indorsed the note to plaintiff who, in turn, sold and indorsed it to the bank. When the note became due a renewal note was made by the same parties and the original note was stamped "paid" but not returned to the maker. Four such renewal notes were made, and the last was executed by Boone as maker and plaintiff as security. The plaintiff was compelled to pay this note after maturity, and then secured the original note from the bank and brought suit on the theory that the original note had not been cancelled and extinguished. *Held*, that the plaintiff was not entitled to recover, because there was a valid agreement clearly expressed that the renewal notes should operate as payment of the original note.

2. ———: ———: ———. The acceptance of a renewal note, to amount to payment of the original, must be taken expressly as payment by agreement of the parties.

3. ———: ———: Cause of Action. The only cause of action an indorser can have against the maker is one founded on the note and such cause can inure to him only from payment of the note by him.

4. ———: ———: **Payment.** When the indorser of a promissory note pays the amount of a note to his indorsee, he does so upon the independent contract of indorsement, and thus reacquires the note which he had sold.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*Smoot & Cooley* for appellant.

(1) Plaintiff having indorsed the note to the bank, on being compelled to pay same was re-invested with title thereto, and entitled to proceed thereon as though he had not negotiated it. Peers v. Kirkham, 46 Mo. 146; Keys v. Keys, 217 Mo. 48; Fenn v. Dugdale, 31 Mo. 580. In Fenn v. Dugale it is held that the indorser's action can only be maintained upon the bill itself. In Keys v. Keys, the same rule is announced, and the difference of relation between an indorser and a surety is pointed out. (2) The giving of renewal notes did not extinguish the original note nor plaintiff's right of action thereon. Lease v. Goode, 67 Mo. 126. This was where new note was given with a new name as principal and one of the former principals as surety. Held debt not extinguished. In the case at bar, the original note was to be held till all renewals were paid. Hence, it was not extinguished nor was endorser released. Bank v. Rogers, 123 Mo. App. 569; see also Reynolds v. Mitchell, 106 Mo. 365.

*Millan & Banning* for respondent.

(1) A negotiable instrument is discharged by its intentional cancellation by the holder. R. S. 1909, sec. 10089. Cancellation of a note may be effected by writing or stamping words or lines upon its face, provided the instrument, by its condition, shows it has been cancelled. 4 Am. and Eng. Law (2 Ed.), 503;

District of Columbia v. Cornell, 130 U. S. 633. To render inoperative the cancellation evidenced by the condition of the note in suit, appellant, even if he were the proper party to raise the point, would have to allege and prove that it was made unintentionally or under a mistake or without authority. R. S. 1909, sec. 10093. Any act which discharges a negotiable instrument discharges a person secondarily liable thereon. R. S. 1909, sec. 10090. (2) Where the act which discharges the instrument is done by the maker, whether it operates as a payment, discharge, or renewal of the old note, the maker alone acquires the right to the discharged note, and if the note is not discharged the title thereto remains in the holder. In neither case would the old note support a suit such as appellant has instituted. Bank v. Freund, 80 Mo. App. 657. (3) A valid agreement for an extension of time to the principal debtor without the consent of an indorser releases the latter. R. S. 1909, sec. 10090. (4) An indorser who pays the amount·of a note on his contract of indorsement must recover from his indorser on the very note he is compelled to take up. Keys. v. Keys, 217 Mo. 48. (5) The case having been tried to the court sitting as a jury, and a general verdict having been rendered on all the issues of fact without declarations of law being asked or given, the appellate court will not review the finding of the trial court on questions of fact. Jordan v. Davis, 172 Mo. 599.

JOHNSON, J.—Defendant Pemberton was the payee of a negotiable promissory note of which L. W. Boone was the maker. Before maturity Pemberton, for value, sold and indorsed the note to plaintiff who, in turn, sold and indorsed it before maturity to a bank. When the note fell due, Boone, Pemberton and plaintiff executed and delivered a renewal note to the bank. The bank accepted the new note and stamped the original "Paid" but did not return it to the maker Boone.

When the renewal note matured a new note was given to the bank, signed and indorsed as the others and the second note was cancelled. Four such renewal notes were given successively and when the last one matured a new note executed by Boone as maker and plaintiff as surety was accepted by the bank in renewal of the last note which was cancelled. Plaintiff was compelled to pay this note after its maturity and, obtaining the original note from the bank, brought suit upon it against defendant on the theory that the original note had not been cancelled and extinguished by the renewal notes and that defendant is liable to him as his indorser. The principal defense in the answer is "that said first note was fully satisfied and discharged by said renewal note and no right of action thereon exists in favor of plaintiff or any other person."

A jury was waived and the court, after hearing the evidence, rendered judgment for defendant. No declarations of law were asked or given. Plaintiff appealed.

There is evidence in the record introduced by plaintiff which tends to support his contention that when the first note was renewed all the parties to the transaction agreed that the original note should not be regarded as paid and extinguished but this evidence is met by strong contradictory evidence.

The cashier of the bank introduced as a witness testified on direct examination: "When Meredith came and this renewal note was given they agreed I should hold the original note. That agreement was between the parties that signed it, indorsing the note to the bank. It was between Mr. Meridith, Mr. Boone and Mr. Pemberton. The agreement about my holding it, and what was said was for me to hold the note, as I remember it, Mr. Meredith suggested it and the other two said that was all right that I hold the original note until the renewals were paid. They at that time understood there was likely to be more. . . . They

said at that time they expected it would have to be renewed again. It was to be held until the renewal notes were paid. I was to hold it for Mr. Meredith. It was at his suggestion.''

On cross-examination he said: ''When it (the original note) fell due, we took a renewal note, signed as the original note, for the same amount plus the interest. I don't remember the amount but if there was anything added to it, it was nothing only the interest. It was for the principal of the original note and accrued interest. Took a renewal note payable in ninety days as I remember. Took it in payment of the original note so far as we were concerned. We considered the old note, the original note, was paid and discharged as to us. It is stamped on the face of the note. That is our stamp.''

Speaking of the transaction relating to the giving of the last note the witness said: ''When the last renewal note fell due, I don't remember what notice I gave. It is not a fact that I told Mr. Boone Mr. Pemberton had moved away from that vicinity and I would no longer look to him for pay on that note. We made that note out to ourselves. All the others had been made out payable to Pemberton and the Meredith Lumber Company, but this last note I wrote out myself and made it payable to the Bank at Gibbs, and gave it to Mr. Boone in person. I told Mr. Boone Mr. Pemberton had,—as I remember we had sent notice to both of them and Mr. Boone came in and I told him Mr. Pemberton had traded off his farm and moved to Brashear and we didn't care to carry the note any longer in that condition as Mr. Pemberton had sold his farm and moved to Brashear he was too far off from us and he said he wanted it and I told him 'If it is all right with Mr. Meredith to leave Mr. Pemberton's name off we will still carry the note of Mr. Meredith's indorsement, or he can sign the note with you rather, and you can arrange with him as to re-

leasing Mr. Pemberton,' so he took the note and went down to see Mr. Meredith. I don't remember whether we gave a notice or not when the last renewal note fell due. I don't remember how we notified the gentlemen named on the notes. I don't remember whether I ever gave Mr. Pemberton any notice that last renewal note fell due at the time it was due. When I gave Mr. Boone this note made payable to the bank, he took it to Mr. Meredith and got his signature and brought it back to us and the bank accepted it. He brought it back in the course of an hour or so, I suppose. I don't remember. It was all in the same afternoon. I knew Mr. Pemberton's name was not on the note. I didn't know anything about whether it would be on the note. I didn't object to it being on the note. Didn't consider it was necessary. We didn't consider it a renewal. We considered it a payment. I don't remember that we stamped the last renewal note signed by Mr. Boone and indorsed by Pemberton and Meredith paid. I stated that we took the last note signed by Mr. Boone and Mr. Meredith as payment of the last renewal note indorsed by Pemberton so far as we were concerned. We were the owner of the last renewal note and the only one who had a right to demand this note. And took it as payment of the last renewal note.''

Defendant in his testimony denied the existence of any agreement between the parties that the bank should hold the original note until the payment of the debt and stated that the first time he knew that note had not been returned to Boone was after plaintiff had paid the last note. Without going further into the details of the evidence we find abundant evidentiary support for the position of defendant that the parties intended the first renewal note should be given in paymant and full discharge of the original note and that this understanding applied to all of the subsequent renewals.

The rule in this State is that the acceptance of a renewal note, to amount to payment of the original, must be taken expressly as payment by the agreement of the parties. [Appleton v. Kennon, 19 Mo. 637; Leabo v. Goode, 67 Mo. 126; Keys v. Keys, 217 Mo. 48.]

In the case lest cited the view is expressed that the acceptance of a renewal note bearing additional security will be considered of itself as a payment of the original note. But the Supreme Court does not say in that decision that an agreement that a renewal note shall operate as a payment of the original note must be supported by a new consideration and our understanding of the law is that where such agreement is clearly expressed it is valid, though the renewa. note bears no additional security for the payment of the debt.

The testimony of the cashier of the bank, the holder of the note, instead of aiding the contention of plaintiff is against it. While he states that the parties liable on the note as maker and indorsers agreed among themselves that the old note should be retained by the holder (for what purpose he does not state), he further says, in substance, that the bank was not a party to that understanding but accepted the new note not as a mere renewal of the old but as payment thereof. The maker and indorsers acquiesced in this position of the holder and it is difficult to perceive any legal ground on which an argument could be based that the old note might be considered as paid and extinguished so far as the holder was concerned by the acceptance of the new note but still be kept alive for the use of an indorser who had not paid the debt but had merely renewed his liability by indorsing the nenewal note accepted as payment by the holder. The only cause of action an indorser can have against the maker is one founded on the note and such cause can inure to him only from payment of the note by him.

Meredith v. Pemberton.

The nature of the relation an indorser sustains to the maker of a note thus is stated in Keys v. Keys, supra:

"There is a vast difference between an indorser and a surety in this respect. With the surety, when payment is made by him, a cause of action arises for the amount so paid and he can sue upon the implied promise to repay what he has been out. Different, however, with an indorser of a note. There is no contract either express or implied with him and the maker that he will pay any sum upon the obligation to another. The only contract is that the maker will pay to the payee the amount of the note as per its terms. In other words, the contract of indorsement is an independent contract, by the terms of which the maker of a note is not bound. If the payee of a note chose to indorse the note, and thus enter into this independent contract, which in law is to the effect that he will pay the amount of the note if the maker does not, and he does so pay such amount, he is entitled to have back from his grantee the note, which is his evidence of debt against the maker. but no more. In other words, he is left just where he was before he made the contract on his own responsibility,—the contract of indorsement. The two cases above cited have not been overruled nor criticised, nor should they be overruled. When the indorser pays the amount of a note to his indorsee, he does so upon the independent contract of indorsement, and thus reacquires the note which he had sold."

Since the original note was not paid by plaintiff but as a matter of law was paid by Boone, the maker, its extinguishment as to the rights of the holder had the effect of discharging the indorsers. As to them the renewal note was as much a new and independent contract as it was between the maker and the holder. The old note was dead when this suit was brought and

since the action is founded on that note, it follows that the court did right in giving defendant the judgment.

In the absence from the record of any declarations of law it becomes our duty to consider the case on the evidence most favorable to the party in whose favor the judgment was rendered.    Consequently we are justified in accepting the hypothesis presented by the testimony of the cashier of the bank which, as we have shown, calls for an affirmance of the judgment.

The judgment is affirmed.    All concur.