EMMA RUSSELL, Appellant, v. CLAUDE WYANT, et al., Respondents, VICTOR E. SCHUTTE, Intervenor.

In the Kansas City Court of Appeals, May 21, 1923.

1. PRINCIPAL AND AGENT: Agency Cannot be Proved by Declaration of Agent but Can be by His Testimony. While agency cannot be proved by the declaration of the agent, it can be by his testimony.

2. BILLS AND NOTES: Negotiability: A Provision That All Parties to a Note Agreed to All Extensions Thereof, Did not Make Note Non-negotiable. A provision in a note that "all signers, endorsers and parties to this instrument hereby agree to all extensions" did not make note non-negotiable.

3. ———: Surety: Extension of Payment of Note by Agreement Between One Assuming Payment and Payee, Without Consent of Maker Who Had Become Surety, Had Effect of Discharging Maker but was Binding Between the Parties. Where plaintiff accepted a deed to lands subject to a deed of trust thereon, securing a note which was assumed by her, she became as to the maker thereof, the principal debtor, the maker becoming the surety, and when the payee through his agent consented to the arrangement, plaintiff also became the principal debtor as to him, and an agreement between her and the payee to extend the note, made without knowledge or consent of the maker, though it would discharge the maker as surety, was valid as between plaintiff and the payee.

4. ———: Consideration: An Extension Agreement Made Before Maturity of Note, Reducing Rate of Interest to be Paid Thereunder, Held Sufficient Consideration Therefor. Where an extension agreement was made before maturity of note, an agreement to pay interest in the future at the rate of six per cent per annum instead of eight per cent, was in itself a sufficient consideration moving to plaintiff for the extension agreement.

5. ———: Note Given by Maker to Payee Without Consideration Became Valid and Binding Obligation of Plaintiff Who Assumed Payment and Obtained Extension Thereof. Where the owner of a note secured by deed of trust was the owner of the land, there was no consideration for note at the time of its execution, and while it was not a binding obligation, it became such as to plaintiff who

thereafter became the purchaser of the land, assumed the payment thereof and requested and obtained from payee extension as to time of payment, the extension agreement being sufficient consideration for the note as between plaintiff and payee.

6. ———: Material Alteration: Endorsement on Back of Note Held Separate Agreement and not Material Alteration of Instrument Rendering Purchaser Thereof, Before Maturity, not a Holder in Due Course Within Meaning of Statute. Where a note expressly provided that, "all signers, endorsers and parties agree to all extentions," an endorsement on the back of the note in reference to the extension of the time of payment and change in the rate of interest, which did not require consent of parties, *held* not a material alteration rendering subsequent purchaser, before maturity, not a holder in due course within the meaning of sections 910 and 911, Revised Statutes 1919, the endorsement being a separate agreement.

7. ———: Finding of Chancellor That Extension Agreement was as Actually Endorsed on Note, Held Justified by Evidence. Where plaintiff had assumed payment of a note secured by deed of trust and on more than one occasion recognized the validity of an extension agreement endorsed on back of note by pleading such agreement in various suits and in none of her suits did she attack the validity of the note or extension agreement, but paid the interest on the note in accordance with the agreement, *held* to justify finding of chancellor that the agreement for extension was as actually endorsed on note.

8. ———: Infirmity: Defect: Notice: Nothing Short of Actual Knowledge of Infirmity or Defect or Bad Faith Will Defeat Holder's Title to Note. Under sections 838 and 848, Revised Statutes 1919, to constitute notice of an infirmity or defect in the title of the person negotiating a note, the person to whom it is negotiated must have had actual knowledge thereof or such knowledge that his action in taking the same amounts to bad faith, and nothing short of such knowledge or bad faith will defeat holder's title, mere suspicion, negligence or possession of facts that would put a reasonable man on inquiry not being sufficient.

9. ———: ———: ———: ———: Pending Suit to Enjoin Sale of Note Where not Based on Any Imperfection Therein, Held Insufficient to Charge Purchaser with Notice of Infirmity or Defect in the Title to the Note. The purchaser of a note was not charged with notice of any infirmity or defect in the title thereof, by reason of being told that a petition had been filed to enjoin the holder from selling the same, such purchaser not being required to investigate and particularly where if he had done so, he would merely have

found that the suit was not brought on account of any imperfection in the note but because plaintiff therein had a judgment against the holder which she was seeking to have paid.

10. **TRIAL PRACTICE:** Abuse of Discretion: Held There was no Abuse of Discretion on Part of Court in Refusing to Permit Introduction of Testimony after Close of Case Which Would Have Reopened the Same. Where record showed that at the close of the testimony in the case both parties rested, and at the time set for argument upon a future date plaintiff introduced certain depositions without objection, which were read, *held* there was no abuse of discretion in the court's refusal to permit plaintiff to introduce other testimony which would have practically reopened the case.

Appeal from the Circuit Court of Jackson County.— *Hon. Thos. B. Buckner*, Judge.

AFFIRMED.

*Robert H. Worline* and *Henry S. Julian* for appellant.

*Rozzelle, Vineyard & Boys* and *James G. Smith* for respondent.

BLAND, J.—This is an action to enjoin the foreclosure of a second deed of trust securing a note in the sum of $3020. At the conclusion of the evidence the chancellor dissolved the temporary injunction and rendered judgment against the plaintiff and in favor of the intervenor. Plaintiff has appealed.

The facts out of which this controversy arose are as follows: On April 30, 1919, plaintiff entered into a contract with one Claude Wyant in the City of Toledo, Ohio, wherein they agreed to exchange certain property. Wyant contracted to convey to plaintiff, with some other property, a certain apartment in Kansas City, Missouri. The apartment was to be conveyed subject to two mortgages aggregating $11,000. Plaintiff agreed to convey a farm which she owned in Ohio subject to a mortgage. On the day of the making of this contract there was a

first mortgage upon the Kansas City property held by the Jackson County Savings and Loan Association for about $8000, calling for monthly payments. After making the contract and before the deeds were exchanged Claude Wyant, who owned the Kansas City property, caused Deane J. Wyant, his cousin, who held the title to the property, to execute a note in the sum of $3020 and a second deed of trust securing the same in favor of Samuel Wyant, father of Claude, the latter being the real beneficiary. This second note was dated Kansas City, April 23, 1919, and was made payable at the Dime Savings Bank Company of Toledo, Ohio, on July 1, 1920, with interest at the rate of eight per cent payable monthly. The note recited, "All signers, endorsers and parties to this instrument hereby waive demand, protest and notice of non-payment and agree to all extensions. . . . This note is received (secured) by second deed of trust on property known as #2531-3 Gillham Road, Kansas City, Mo." There was no consideration for this second note and mortgage, the same being made solely for the convenience of Claude Wyant who was the real owner of them.

Thereafter Claude Wyant returned to Toledo, Ohio, and on May 6, 1919, met plaintiff in a bank in that city for the purpose of exchanging deeds to be executed under the exchange contracts. Plaintiff made a deed to the Ohio farm to Samuel Wyant. The latter was not present but Claude Wyant testified that he (Claude) was the agent of his father in all of these transactions. Claude Wyant testified that at the meeting at the bank plaintiff said she would not close the deal unless the terms of the $3020 note were changed; that there would have to be an extension of time for the payment of the note and the interest lowered. Claude testified that he agreed to extend the note on behalf of his father and that at the dictation of Mr. Jones, the agent of plaintiff, he wrote the following endorsement, which appeared on the back of the note:

"Toledo, May 20th, '19 I hereby certify that this within note is extended as follows: $1020 due May 16th '21; $1,000 due November 16, '21; $1,000 due May 16, '22; interest to be 6 per cent, payable semi-annually."

That he first wrote this endorsement with lead pencil but immediately traced it with ink in the presence of plaintiff and Jones; that the deal was closed on this basis.

Plaintiff, however, testified to a different state of facts in regard to the transaction had at the Toledo Bank, which were corroborated by Jones and, in part, by two other witnesses testifying in her behalf. Plaintiff's version of what happened was that she objected to the form of the note which called for interest payable monthly at eight per cent and demanded that the payments be extended to 1922, 1923, 1924 instead of becoming due on July 1, 1920, as provided in the note; that Claude Wyant agreed to make this extension but that plaintiff and the banker told Claude that such extension would be invalid unless it was made by Samuel Wyant, the holder of the note and Deane Wyant the maker; that Claude Wyant stated that whatever he did was all right with his father and that Claude scribbled a number of proposed agreements on the back of the note in lead pencil. Jones testified that the way the agreement finally read was that the payments were to be in 1922, 1923, and 1924 instead of 1921, 1922, and 1923 as written on the back of the note by Claude. Before the transaction was consummated Claude Wyant stated that he must go across the street to a bucket shop and that he would be back in a few minutes. He left some papers including the deed t ` the flats. He never returned but recorded the deed to ⁓ n- tiff's property. Plaintiff testified that when Clauc. ft he handed her a "bunch" of papers to look at and wₓ en she opened them there was nothing in them that she was interested in except a deed to the apartment in Kansas City.

On December 20, 1919, plaintiff filed a suit in the Court of Common Pleas of Lucas County, Ohio, against

Claude Wyant for breach of the terms of the exchange contract, alleging that while she had complied with the terms of the contract on her part that defendant had failed to comply with his part in that he had not conveyed to her certain property other than the Kansas City apartment that she was to get under the exchange contract; that he had deeded the Kansas City property to her but since that time had collected the rents without her consent and had fraudulently appropriated them to himself. At the trial of this case there was a judgment in the sum of $3000 rendered against defendant and in favor of plaintiff. On the 11th day of February, 1921, she caused execution to be issued upon said judgment which was returned *nulla bona*. Thereupon she filed in said court a suit in equity against said Claude Wyant founded upon and in aid of the execution in the other suit, which had for its object to impress all of the property of the defendant in order to satisfy her judgment. In the latter suit she alleged that Claude Wyant was the real owner of the beneficial interest in the second deed of trust and note on the Kansas City property; that defendant was threatening to foreclose said mortgage without satisfying the judgment of plaintiff, and asked that defendant be enjoined from foreclosing the mortgage or to bring any action to secure satisfaction of the note or to convey or assign the same to any other person for the purpose of selling defendant's interest in the same, or to bring any action in the name of such person to recover upon said note or to foreclose the mortgage. A summons in this last-mentioned suit was issued, directed to the sheriff of Lucas County, Ohio, who deputized a deputy sheriff of Jackson County, Missouri, to serve the same upon Claude Wyant, which was done on the 16th day of April, 1920, in Kansas City, Missouri. No other service was had upon defendant in that case, and it is not contended that such service was sufficient.

On September 29, 1920, plaintiff filed a suit against Claude Wyant and the sheriff of Jackson County, Mis-

souri, in the circuit court of said county alleging that she was the owner of the flats in Kansas City subject to a first deed of trust and a second deed of trust which latter deed in the sum of $3020 was given by Deane J. Wyant to Samuel Wyant, payable on or before July 1, 1920, "and which said note is now owned by the defendant, Claude Wyant, *which has been extended by endorsement on the back thereof* by the owner as follows: $1020 due May 16, 1921; $1000 due November 16, 1921; $1000 due May 16, 1922. Interest to be six per cent payable semi-annually, which endorsement was signed, Samuel Wyant, the payee in said note." (Italics ours); that all of the interest had been paid on the note except the last semiannual interest installment, which she had been unable to pay for the reason that the note had not been left at the Toledo bank for collection and the bank had refused to receive the payment for the interest and Claude Wyant had refused to receive the same when mailed to him; that the principal note was not due and that the sheriff had advertised the property for sale under the second deed of trust and would sell the same unless enjoined from so doing. It seems that nothing came of this suit but that the interest was thereafter paid and accepted by Claude Wyant, the note on the back thereof contained the following endorsement:

"Nov. 29, 1919, Pd. $90.60 Interest to Oct. 23, 1919.

"Nov. 8, 1920, Pd. $181.20 Interest to October 23, 1920."

The note also contains the following indorsement upon its back—

"Pay to the order of Claude Wyant—Without recourse on me        Samuel Wyant."

"Without recourse on me Claude Wya~'

In the early part of April, 1920, Claude Wyant was in Kansas City and being acquainted with George W. Goldman, a broker, asked Goldman if he would sell for him the note in question. On or about the 15th day of April, 1921, Goldman solicited intervenor Schutte to buy

the note.   Schutte had bought notes through Goldman before and stated to him that if he, Goldman, thought the paper was good "to investigate and see that the title was all right and I will investigate the security." Goldman made an extended examination as to the note. He made an unsuccessful attempt to find plaintiff and visited the owner of the first deed of trust and there interviewed a Mr. Worline, its attorney and who is now one of the attorneys for plaintiff.   Goldman employed an attorney to examine the records of the Recorder of Deeds of Jackson County, Missouri, and those of the circuit court and collector of said county.   This attorney discovered the petition in the injunction suit that had been filed in the circuit court of Jackson County.   He reported that the title was clear and in support of his opinion submitted the said petition in injunction.   Worline and plaintiff testified that at the interview with Worline the latter told Goldman, who was accompanied by Claude Wyant, that there was a "controversy between these people in Ohio;" "that a writ had been served on Mr. Wyant in my office . . . enjoining him from selling that note."   Goldman and Wyant testified that nothing was said in the interview with Worline in reference to the equity suit pending in the State of Ohio.   Wyant testified that he never told Goldman of said suit, thinking it of no consequence, and Goldman and Schutte testified that they had no knowledge of it.

On April 29, 1921, after the conversation with Worline and the report of the attorney, Schutte purchased the note for $2790.   The first installment of the note falling due on May 16, 1921, and not having been paid, Schutte procured the sheriff of Jackson County to commence foreclosure proceedings whereupon this suit upon July 1, 1920, was brought to enjoin the foreclosure. No services was had upon the defendant Claude Wyant. The sheriff answered that he was informed that the facts as stated in plaintiff's petition were not true and asked the court to require plaintiff to make proof thereof.

The answer of intervenor Schutte was a general denial but admitted, as alleged in the petition, that at the time the note and deed of trust were given Claude Wyant was the owner of the property and that he was at all times the actual beneficial owner of the note and deed of trust and pleaded the transfer of the note and deed of trust to intervenor by Claude Wyant, which it alleged was a negotiable promissory note and was purchased before maturity. The reply was a general denial and asked that intervenor Schutte be compelled to surrender the note into court and that it be cancelled, together with the deed of trust.

It is the contention of plaintiff—". . . that Schutte the intervenor purchased a non-negotiable instrument, and in his hands it was open to all the defenses that could have been made by the maker Deane Wyant or any other person who was called upon to pay;" that the note "was conceived in fraud," was without consideration and that the extension was made without authority of either Samuel Wyant or Deane J. Wyant; that the note was due July 1, 1920, and was purchased after maturity; that Goldman in making the investigations was the agent of Schutte and notice to Goldman of the pendency of the equity suit in Ohio was notice to Schutte; that the endorsement on the back of the note purporting to extend the time of payment was an alteration which made the instrument absolutely void; that the note on its face provided for extensions and this rendered it non-negotiable on account of uncertainty in time of payment; that Schutte was not an innocent purchaser in due course.

We first take up the question as to whether the extension made by Claude Wyant at the bank in Toledo, Ohio, was a valid one and supported by a consideration. There is undisputed testimony that the extension was made by Claude Wyant as the agent of his father who purported to be the payee and owner of the note. Claude testified to this and while agency cannot be proved by the declaration of the agent, it can be by his testimony,

214 M. A.—25

[Christian v. Smith, 85 Mo. App. 117.]   As to the consent of the maker, Deane J. Wyant, if such consent was necessary, that consent was embodied in the note itself, which provided that "All signers, endorsers and parties to this instrument hereby  . . .   agree to all extensions." Such a provision in a note does not make it non-negotiable. [City National Bank v. Goodloe-McClelland Commission Co., 93 Mo. App. 123; Jacobs v. Gibson, 77 Mo. App. 244, 249; First National Bank v. Skeen, 101 Mo. 683; Farmers and Traders Bank v. Laird, 188 Mo. App. 322.]

However, the changing of the rate of interest was not agreed to by Deane J. Wyant but we do not think that it is material to the issues in this case whether Deane Wyant consented to the extension agreement.   There is no question but that when this property was conveyed to the plaintiff it was not only conveyed subject to the second deed of trust but that the deed of trust was assumed by her; she became as to said Wyant the principal debtor and Wyant the surety and when Samuel Wyant, through his agent Claude, consented to the arrangement, plaintiff became the principal debtor as to him as well as to Claude Wyant the surety. [Crone v. Stinde, 156 Mo. 262, 267, 268, 269; 2 Jones on Mortgages (7 Ed.), sec. 741; 19 R. C. L. 374, 375; Speer v. Home Bank of Forest City, 200 Mo. App. 269, 276.] The agreement entered into by Samuel Wyant, the payee, and plaintiff, the principal debtor, to extend the note made without the knowledge or consent of Deane Wyant, as the record shows it was made, would discharge the maker Deane Wyant as surety but is valid as between plaintiff and Samuel Wyant. [2 Jones on Mortgages (7 Ed.), par. 742; Fire Ins. Co. v. Hauck, 71 Mo. 465.]   But the matter of the discharge of the maker of the note as surety is a defense personal to him and cannot be urged by plaintiff.   Plaintiff having requested the extension without requiring the consent of Deane Wyant is estopped from asserting that such consent was necessary. [8 C.

J. 766, sec. 1031.] There is no question but that there was a valid consideration for the extension. The extension agreement was made before maturity of the note and the agreement to pay interest in the future at the rate of six per cent per annum instead of eight per cent was in itself a sufficient consideration moving to plaintiff. [Huff v. Cole, 45 Ind. 300; Moore v. Bank, 22 Mo. App. 684, 690; 8 C. J., p. 438, 439, par. 647.]

As shown by the pleadings in this case, Claude Wyant was at all times not only the owner of the note and mortgage but was the owner of the property itself. At the time the extension agreement was made he was therefore the owner of the note and, of course, there was no consideration for the note at the time it was executed and it was really not put in circulation until the transaction between himself and plaintiff was consummated wherein plaintiff purchased the property. While it did not become a binding obligation on any one at the time it was executed, there is no question but that it then became such as to plaintiff and Claude Wyant when plaintiff asked for extension of time for the payment, agreeing to pay it. This was ample consideration for the note as between Claude Wyant and plaintiff. [Graham v. Finnerty, 232 S. W. 129; Devens v. Van Valkenburg, 192 Mo. App. 215.] Wyant and plaintiff had authority to make any contract in relation thereto that they saw fit without consulting any one else. We think then that there is no question about the validity of the extension. The extension being valid, Schutte purchased the note before maturity. If there was fraud on the part of Claude Wyant in the execution of the exchange contract and the note and deed of trust in controversy, (and plaintiff has wholly failed to point to any) we think there is no question but that Schutte was a purchaser in due course.

It is claimed that the endorsement on the back of the note in reference to the extension of time of payment and change in the rate of interest was a material alteration of the note under the provisions of sections 910 and 911,

Revised Statutes 1919, and therefore the note was made void by such alteration, and the note having shown such alteration on its face when Schutte purchased it, he was not a holder in due course. However, there is nothing in connection with the writing upon the back of the note to invalidate it. As we have before stated, the extension agreement and the agreement as to the change of rate of interest did not have to be consented to by either the maker or the payee, as the note was not put in circulation until the extension was made, and even if Deane Wyant had been the real maker and Samuel Wyant the real payee in the note, the endorsement on the back of the note was not a material alteration within the meaning of the statute but a separate agreement. [Moore v. Bank, supra; Investment Co. v. Scales Co., 277 Mo. 376.]

As to the question whether the agreement was to extend the payments so that they should be made in 1922, 1923, and 1924 instead of 1921, 1922 and 1923, or whether there was any final agreement on this matter at all entered into between Claude Wyant and plaintiff at the bank in Toledo, Ohio, we are constrained to uphold the chancellor in deciding that the agreement and the occurrences at said bank were as testified to by Claude Wyant, for the reason that plaintiff on more than one occasion recognized that this was the agreement; in her first petition for an injunction filed in the circuit court of Jackson County, Missouri, in which she quotes *verbatim* the agreement as it appears on the back of the note in connection with her allegation as to the endorsement on the note, she does not attack its validity but alleges, in effect, it to be valid. Her only ground for injunction being that she attempted to pay the interest due on the note but could not and that the same had been refused by Claude Wyant the owner. She afterwards paid the interest upon the note and in none of her various suits has she attacked the validity of the note or the extension agreement in question, but at all times assumed that it was a valid note.

It is claimed that when Goldman was notified of the pendency of the equity suit in Ohio prior to the purchase of the note by Schutte, he was acting as the agent of Schutte in making the investigation as to the validity of the note. Schutte insists that Goldman was not his agent and so testified at the trial, but assuming that his testimony that he told Goldman, when the latter approached him in reference to buying the note, that he wanted Goldman to investigate the title, is sufficient to show that Goldman was Schutte's agent for such purpose, we think that the evidence as to whether Goldman was told at Worline's office about the pendency of the equity suit in Ohio is so evenly balanced as not to justify us in disregarding the conclusion reached by the chancellor who saw the witnesses. However, assuming that Worline told Goldman what Worline testified he told him, we do not think that Schutte was in possession of such information as would render him a purchaser not in due course. It will be borne in mind that all that Worline said was that the suit was to enjoin Claude Wyant from selling the note. A holder in due course is defined in section 838, Revised Statutes 1919, as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 843, Revised Statutes 1919, provides as follows: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

To charge a purchaser of a note with notice of the infirmity or defect, it is not sufficient that he be in possession of mere suspicious facts, or facts that would put a reasonable man on inquiry, or be guilty of mere negligence. Actual notice of the facts must be brought home to the holder. Nothing short of actual knowledge or bad faith will defeat the holder's title. [Bank of Hale v. Linneman, 235 S. W. 178; Downs v. Horton, 287 Mo. 414.]

What knowledge would plaintiff have by simply being told that a petition had been filed to enjoin Claude Wyant from selling the note? He was not required to investigate and had he done so he would have merely found that plaintiff was claiming that Wyant should be enjoined from selling the note, not on account of any imperfection in the note but because she had a judgment against him that she could not satisfy and she wanted to impress the note and mortgage for the purpose of satisfying it. If anything, the note and mortgage were recognized as valid by plaintiff in her two suits brought in the State of Ohio. In the injunction suit she filed in this State she alleged nothing against the validity of the note and mortgage. Assuming that plaintiff may show knowledge of defects arising after the execution or assumption by plaintiff and before Schutte's purchase of the note, Claude Wyant was not enjoined from selling the note and even if he had been, he could have conveyed a good title and the only penalty attached to his act would be personal to him, that is, punishment for violation of the injunction.

This case was tried on November 29, 1922. At the close of the testimony the record shows that the following occurred: "Thereupon both parties rested. The Court: You can argue it before me, I will set a time for argument and will continue it now until a week from next Friday. And afterwards, on the 8th day of December, 1922, the following further proceedings were had in said cause." Thereupon some documentary evidence was introduced by plaintiff and without objection

she read the deposition of Deane Wyant upon his examination in chief. Counsel for intervenor was then asked by plaintiff's counsel if he desired to read the cross-examination, and stated that he was not prepared to go into an extensive hearing of the case and was not in a position to introduce testimony in rebuttal. The court then said, "Yes, sir, I think the record was all you were going to introduce. If you are going into it further, I will have to set it down for further hearing." "It was taken under advisement and I am not going to try it again." Thereupon counsel for plaintiff, without objection, read some other depositions. At the conclusion of this counsel for plaintiff offered to show by parol testimony of witnesses that since the issuance of the temporary injunction certain ragged edges and tracings of lead pencil marks on the back of the note had been erased; it being the purpose to prove that the note at the temporary hearing showed erasures and that these erasures had been cleaned off since the temporary injunction was issued. This was offered "on the ground that this would be evidence to put a purchaser on notice." The court refused to permit this testimony and, of course, we cannot say under the circumstances that he abused his discretion in so doing. [Buck v. Buck, 267 Mo. 644, 663; Jackson v. Grand Avenue Railway Co., 118 Mo. 199, 221, 222; Waterworks Company v. Joplin, 177 Mo. App. 496, 531.]

The judgment is affirmed. All concur.