THE REPUBLIC NATIONAL BANK OF ST. LOUIS, APPELLANT, v. INTER-
STATE PRODUCING CORPORATION, RESPONDENT.*

Kansas City Court of Appeals.   May 3, 1926.

---

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 658, n. 39; p. 659, n. 56; p. 775, n. 29; p. 877, n. 80; Bills and Notes, 8CJ, p. 501, n. 18; p. 984, n. 60; p. 989, n. 2; p. 1047, n. 10; Evidence, 23CJ, p. 38, n. 35; Trial, 38Cyc, p. 1945, n. 35.

*J. Herbert Smith* and *William G. Holt* for respondent.

*John M. Atkinson* and *John T. Barker* for appellant.

ARNOLD, J.—This is an action to recover on two promissory notes of $2500 each.

The petition is in two counts, of which the first alleges that on October 1, 1922, defendant made and executed its negotiable promissory note of that date by which, for value received, it promised to pay to the order of James D. McMahon, sixty days after date $2500, with interest from date at eight per cent, together with an additional amount of ten per cent on principal and interest in case said note was placed in the hands of an attorney for collection, or suit was brought on the same; that before said note was due the payee named therein endorsed same to plaintiff for value, and that thereupon plaintiff advanced said sum of money to said payee, whereby defendant became liable to plaintiff as maker of said note; that at maturity the note was duly presented and demand made for payment, which demand was refused; that no part of said note has been paid and the whole thereof is due.

The second count is identical with the first and is based upon the issuance on October 1, 1922, of a note of $2500, which is the same in all its terms as that described in count one, excepting that the note described in the second count is payable ninety days after date. The allegations as to presentment and nonpayment of the note are present as regards the second note and identical in words as in count one.

Judgment is sought on each count for the face of the note therein described, together with the stipulated interest and attorney fees.

The amended answer denies generally the allegations of each separate count; and for further answer, alleges that during the year 1922, defendant advanced sums of money to one James D. McMahon for the purpose of drilling certain wells at El Dorado, Ark., in which defendant retained an interest; that additional money was required for the drilling of said wells, and that said McMahon, on or about September 25, 1922, came to Kansas City and represented to defendant that he would be able to secure $20,000 from one E. N. Fisher and William Sacks, directors and agents of plaintiff bank; and stated and represented to defendant that if defendant would execute to him ten notes of $2500 each he would go to St. Louis and discount said notes and obtain the $20,000 with which to finish the development of the property in Arkansas, agreeing that he, himself, would stand whatever discount was necessary out of his interest in the properties. That, relying upon said representations,

defendant did execute ten promissory notes of $2500 each and delivered them to said James D. McMahon, and that McMahon, together with C. V. Higby, president of defendant corporation, went to St. Louis, Mo., for the purpose of negotiating said notes with said Fisher and Sacks at plaintiff bank; that in St. Louis, McMahon and Higby did meet said Fisher and Sacks who represented that all arrangements had been made by them to discount the paper as above set forth; that said Fisher and Sacks took said notes from McMahon and went to plaintiff bank with said McMahon and Higby, and after discussing the matter with the officers of plaintiff bank and said Fisher and Sacks, the officers of plaintiff refused to accept said paper and to deliver $20,000 thereon; that said Higby then requested the return of said notes from Fisher and Sacks and that said Fisher and Sacks and the plaintiff bank refused to return the notes, stating that said McMahon was indebted to plaintiff bank and Fisher and Sacks; that demand was then and there made by McMahon and Higby upon plaintiff and Fisher and Sacks for the return of the $25,000 in notes; that the same were unlawfully and wrongfully retained and delivery thereof to defendant was refused; that thereafter said Fisher did return to defendant eight of the said ten notes, but refused to deliver the two notes sued upon herein.

The amended answer further pleads lack of consideration for said notes, and that plaintiff well knew there was no consideration therefor and although demand was made upon the plaintiff and said Fisher and Sacks, plaintiff refused to surrender and still retains said notes, claiming and alleging the fact to be that plaintiff is an innocent purchaser thereof for value, when they well knew said notes were obtained by fraud and misrepresentation. The answer prays an order of the court cancelling said notes and an order requiring plaintiff bank to return same to defendant and for judgment in damages for $2500, for costs incurred by defendant by reason of plaintiff's unlawful and fraudulent acts in obtaining and retaining said notes, and for attorney fees and expenses in defending this suit.

The reply is a general denial and for further reply avers that at, and prior to the time the plaintiff purchased the two notes in question, defendant represented and stated in writing to said James D. McMahon and to plaintiff that said McMahon was the legal owner and holder of both of said notes, and that defendant had purchased the entire interest of said McMahon in certain oil properties located at El Dorado, Ark., and had duly executed and delivered said notes, together with certain other notes, to said McMahon in payment for the purchase price of said oil properties; that plaintiff believed and relied upon said representations so made, and that so believing, plaintiff purchased said notes, paying therefor the sum of $5000; that

said McMahon is now and was insolvent when each of said two notes became due; that plaintiff purchased said notes in good faith and for value before the maturity thereof; and had no notice of any infirmity or defect in the title of said James D. McMahon to said notes.

The cause was tried to the court without a jury. No findings of fact nor declarations of law were asked and none given. The court found the issues for defendant on both counts of the petition. The following judgment was entered.

"Wherefore, it is ordered and adjudged by the court that plaintiff have and recover nothing in this cause, that defendant go hence discharged without day as to both counts of the petition, and have and recover of and from said plaintiff all costs herein and have therefor execution."

Motions for new trial and in arrest of judgment were unavailing and defendant appeals.

The facts developed are that plaintiff is a national banking corporation located at St. Louis, Mo., and operating under the laws of the United States; that defendant is a corporation, organized and existing under and by virtue of the laws of the State of Delaware, maintaining its principal office in Kansas City, Mo. The notes sued on were first and second of a series of ten notes, but of different maturities, executed on October 1, 1922, payable to J. D. McMahon. At the time the notes were executed McMahon owed plaintiff the sum of $5000, evidenced by his promissory note in that amount; such indebtedness to plaintiff was secured by two collateral notes of $2500 each, and these were secured by a mortgage on some property in the State of Oklahoma, and a diamond ring of the value of $2500 to $3000.

The evidence in plaintiff's behalf tends to show that in order to pay his indebtedness to plaintiff, McMahon, on October 26, 1922, endorsed and delivered to plaintiff the two notes sued on herein, and thereupon his account with the bank was marked paid and the notes and ring were returned to him. But on this point there is some conflict in the evidence. One John A. Lewis, the president of plaintiff bank, the only witness testifying for plaintiff, first stated that the diamond ring and the collateral notes were returned to McMahon, but on cross-examination, stated that the collateral notes were not returned to McMahon and, at the time of the trial, were in possession of plaintiff's counsel. This witness testified that at the time McMahon paid his indebtedness to the bank by the transfer and delivery of the two notes in suit, he produced and exhibited to plaintiff a letter dated October 24, 1922, which reads as follows:

572

"Interstate Producing Corporation,
"Republic Building,
"Kansas City, Missouri.

"Office of
"C. V. Higby,
"President.                                           October 24, 1922.
"James D. McMahon,
"Kansas City, Mo.
"Dear Sir:

"Whereas on September 1st, 1922—you sold your entire interest in the properties in Eldorado, Arkansas to the Interstate Producing Corporation and the C. V. Higby Trustee, said properties being as follows:

"15 acres with one well, known as the Merowitz tract.

"15 acres with two wells on it and another well drilling, known as the McGowan lease.

"10 acres with one well, known as the Gurley lease.

"And as part of consideration of same, Interstate Producing Corporation issued to you $25,000 worth of notes of $2500 each, first note due December 1st and one note due on the first of each following month until all of the notes are paid, and this transaction was authorized by the Board of Directors of the Interstate Producing Corporation and they further agreed to set aside one-half of their interest of the net oil as and when run, from said leases to meet these notes.

"Yours very truly,
"(Signed)              C. V. HIGBY
"Cvh/h/                "Interstate Producing Corporation.

Defendant's testimony tends to support the allegations contained in its amended answer to the effect that the ten notes in the sum of $25,000 were executed by it in payment for the oil properties mentioned; that the purpose of the issuance of the said ten notes was for discount of all of them by plaintiff. To carry out this purpose, defendant's testimony tends to show that on October 25, 1922, C. V. Higby, president of defendant company, and McMahon went to St. Louis, arriving there on October 26, 1922, early in the morning; that just before arriving in St. Louis, Higby who had the ten notes in his possession, placed them in the possession of McMahon. After arriving in St. Louis, McMahon went to the Jefferson Hotel and Mr. Higby and his wife to the Statler Hotel. Higby testified that not hearing from McMahon during the day of Oct. 26th, he went to the Jefferson Hotel about 5 P. M. and found McMahon in a state of intoxication in a room in company with William Sacks, a director of plaintiff bank and that at this time McMahon still had in his possession the ten notes, issued to him as above stated; that McMahon remained

in an intoxicated condition during the time witness stayed in St. Louis.

The next day, Friday, October 27th, Higby did not meet Sacks or McMahon but saw Fisher about 5 P. M., at which time Fisher told him that he had left the ten notes with the plaintiff "for safe keeping." There is some conflict in the evidence on this point. Plaintiff's witness Lewis, at one time, testified that Fisher brought the two notes sued on to the bank the previous day, October 26, 1922, and that he (Lewis) had bought them from Fisher at that time. Higby had been hunting for Sacks but did not find him until Saturday, October 28th and that he then went with him to plaintiff bank about noon but found the bank closed for the day. They gained entrance and went to the desk of John A. Lewis where Higby and Lewis were introduced by Sacks. In the course of the conversation Sacks said the bank had agreed to discount the ten notes within fifteen days; that this statement was made in the presence of Lewis and was not denied by him at that time. Higby then demanded the ten notes and Lewis said he could not get them because they were in the vault on which the time lock was set, but that he would get them and send them to Sacks on the following Monday morning. Higby testified that Lewis did not then say he had discounted the two notes sued on and that he (Higby) did not know that plaintiff bank claimed these two notes until the next week, and after his return to Kansas City.

After leaving the bank on Saturday Higby went with Sacks directly to the latter's office and sat and talked for fifteen or twenty minutes during which time Sacks assured Higby that he would get the ten notes back. On the Monday following, J. Herbert Smith, of defendant's counsel, wrote a letter to plaintiff demanding the return of the ten notes and within two or three days thereafter Higby received eight of the ten notes through the mail in a plain envelope. The two notes that he did not receive are the ones involved in this action.

Plaintiff's witness Lewis testified that he never received the letter from Higby and that plaintiff was never in possession of all of the ten notes; that at the time McMahon paid his indebtedness to the bank with the two notes in question, he was accompanied by Fisher who was a customer of the bank and well known there; that the day following (October 27th), the discount board of plaintiff bank ratified the action of Lewis in accepting his two notes in payment of McMahon's indebtedness. The records of the bank in evidence show that the two notes in question were entered of record as the last item of business on that day.

It will be seen there is a sharp conflict in the evidence of the parties to this controversy touching the point in question. Plaintiff

claims that its evidence proves that it discounted for value the two notes in suit on October 26, 1922, while defendant insists that its testimony proves that McMahon did not deliver said notes to plaintiff on that date but that, at that time, the ten notes were offered to plaintiff for discount only; that plaintiff took the ten notes and kept them until it could be decided whether or not plaintiff would discount the entire issue, and did not obtain possession of them 'for any other purpose; that plaintiff kept the first two of the ten notes because McMahon owed plaintiff $5000 and, in fact, did not buy the two notes sued on from McMahon; neither did plaintiff surrender to McMahon his $5000 note nor the diamond ring. Neither McMahon, Sacks nor Fisher testified in the case.

There is but one assignment of error, to-wit, that the court, sitting as a jury, erred in finding the issues for defendant and against the plaintiff because the notes were purchased by the bank in good faith before maturity; and the burden of proof was upon defendant to show that plaintiff was not a holder in due course and to prove actual knowledge of fraud on the part of plaintiff; and that defendant has failed to discharge this burden.

The crucial question in this case seems to be as to whether or not plaintiff purchased these notes from the payee in good faith on October 26, 1922, as charged in the petition, and thus became the holder thereof in due course. There is a direct conflict in the evidence on this point; in fact, the witness Lewis testified to facts from which the court, sitting as a jury, reasonably might conclude that plaintiff, in fact, did not purchase said notes on October 26, 1922. This witness testified:

"Q. You may state whether or not the original note held by the bank for $5000 of McMahon was turned over to him at the time you testify you turned over the diamond ring. A. It was.

THE COURT: "Did you surrender the two notes of which the diamond ring was collateral? A. We surrendered one note of $5000 and took two notes of $2500 each.

"Q. You surrendered this $5000 note of which the diamond ring was collateral? A. And the diamond ring.

"Q. Where were the collateral notes? A. In the hands of our attorney.

"Q. Who was that? A. General Atkinson.

By MR. ATKINSON: "What was paid when he got those two notes? A. He paid nothing, but surrendered the diamond ring as collateral.

THE COURT: "State what was done with reference to the surrender of that collateral. A. McMahon's note was held by the bank.

"Q. Does General Atkinson still hold these collateral notes? A. Yes, I think he does as attorney for the bank.

"Q. Did you surrender prior lien to these notes on the date the diamond ring was deposited with The Republic National Bank? A. Yes."

This testimony is quite confusing. It is noted the witness first said the bank surrendered the $5000 note of McMahon and with it the diamond ring, but did not surrender the collateral notes; and almost at the same time testified that McMahon paid nothing to the bank but that the McMahon notes were not surrendered to him but were held by the bank and that the collateral notes pledged by McMahon as security also were held by the bank. From this testimony the trial court probably would be unable to determine whether the $5000 note of McMahon, the two collateral notes and the diamond ring, either or all, in fact, were surrendered to McMahon. Therefore the court would be justified in holding that the plaintiff did not purchase or discount the notes sued on. The situation, then, is that the bank did not surrender to McMahon the collateral notes secured by chattel mortgage on property at Jennings, Okla., and paid no cash for the notes sued on. As to the precise day on which the notes in suit were discounted, there is some uncertainty. Lewis first testified that the notes were discounted on October 27th and later that they were discounted on the 26th. His testimony on this point is as follows:

"Q. And where did you become the owner of them? A. At my desk in my office.

"Q. Who had them? A. E. N. Fisher.

"Q. Who else was there at that time? A. No one besides E. N. Fisher."

After having so testified, he was asked:

"Q. Did you see Mr. Fisher again that day? A. Yes.

"Q. In relation to this matter? A. No, not in relation to this matter."

"And in the same breath, he stated:

"Q. You did not see him in relation to that matter again that day? A. Yes, he came later in the day."

There is testimony in behalf of defendant to the effect that the two notes in suit were not purchased by the bank on October 26, 1922. The witness Higby testified that on October 26, 1922, at about 5 P. M., he went to the Jefferson Hotel and found McMahon and Sacks in a room and that McMahon then had the ten notes in his possession and that witness and Sacks examined them; that Sacks prevailed on witness to leave the notes with McMahon. Of course, if the court, sitting as a jury, believed this testimony there was no error in its holding that plaintiff did not purchase the notes sued on on October 26, 1922, and consequently this appeal must fail.

Under section 845, Revised Statutes 1919, the burden is on the

holder of a note in due course to prove his good faith and lack of notice of fraud, when fraud has been shown in the procurement of the note; but if the holder shows this, the burden is then on the defendant to prove specific facts tending to show the holder's actual knowledge of fraud. [Bank v. Linneman, 235 S. W. 178.] Plaintiff insists that it did show its good faith and lack of fraud on its part by the introduction of the letter from Higby, president of defendant company, above set out. But we do not think this conclusive evidence in view of the testimony of Higby to the effect that on October 26, 1922 at about 5 P. M., he saw Sacks and McMahon in a room at a hotel and that Sacks induced him to leave the ten notes in McMahon's possession. Sacks was a director in plaintiff bank and, as shown by the record, had figured largely in the deal. As held in the case of Bank v. Linneman, supra, actual knowledge by the holder of the note, of fraud, may be inferred from facts and circumstances surrounding the purchase of the note; but not from things that would merely put a prudent man in inquiry. [Bank v. Bullock, 270 S. W. 119; Russell v. Wyant, 214 Mo. App. 377, 253 S. W. 790; Downs v. Horton, 287 Mo. 414, 230 S. W. 103.]

The record seems to be pregnant with facts and circumstances upon which the trial court, sitting as a jury, could reasonably conclude that plaintiff knew the situation relative to the facts through which the notes came into the possession of McMahon. Under these circumstances the trial court, sitting as a jury, may not be convicted of error in entering the judgment that it did. The trial court is not required to believe the evidence of one side or the other, but, having the witnesses before it, that court is in better position than are we to reach a just conclusion in the matter, even if it were within our province to weigh the evidence. [Way v. Rupp, 234 S. W. 515, 517; State ex rel. v. Ellison et al., 286 Mo. 225, 226 S. W. 577; K. C. Breweries Co. v. Teeter, 194 S. W. 732; Tebeau v. Ins. Co., 271 Mo. 626, 197 S. W. 130; Paine v. O'Donnell, 191 Mo. App. 300, 178 S. W. 873.]

No declarations of law, or findings of fact were given or requested. We think the record discloses evidence of sufficient substantiality to support the finding of the court and the judgment entered thereon. So far as a judgment for defendant based on the evidence is concerned, it must be presumed on appeal that the trial court reached the correct conclusion. [Paine v. O'Donnell, supra.] In the absence of declarations of law, it is our duty to consider the case on the evidence most favorable to the party in whose favor the judgment was rendered. [Meredith v. Pemberton, 170 Mo. App. 100, 156 S. W. 70.] Having thus considered the case, we conclude the judgment should be affirmed. It is so ordered. *Bland, J.,* concurs; *Trimble, P. J.,* absent.