FIRST NATIONAL BANK, Appellant, v. HALL, Respondent.

St. Louis Court of Appeals, March 3, 1908.

1. BILLS AND NOTES: Innocent Purchaser: Fraud in Procuring Signature. The signer of a bill of exchange or promissory note whose signature was procured through fraudulent practices which deceived him regarding the instrument or its contents, is not liable even in an action by an innocent purchaser for value before maturity, provided such signer was not negligent in fail-

ing to learn the contents of the instrument signed. Whether the Negotiable Instrument Act of 1905 would affect an instrument signed after its enactment in that respect is not determined.

2. ———: ———: ———: **Negligence.** Where the maker of a note was able to sign his name but could not read, and executed a note while in full possession of all his faculties, and when members of his family were present who could read, he was guilty of gross negligence and could not defend against an action on the note by an innocent purchaser for value before maturity, on the ground that his signature was procured through fraud which induced him to believe it was a different kind of instrument.

3. ———: ———: ———: **Detaching Part of Instrument.** In an action on a note by an innocent purchaser where the defense offered was that the signature of the defendant was procured by fraud, the evidence is examined and held that it had no tendency to prove a defense on the ground that forgery was committed by detaching parts of the instrument as defined in section 2018, Revised Statutes 1899.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED (*with directions*).

*Orr & Luster* for appellant.

The instructions numbered one and two on part of the plaintiff correctly declare the law. The court erred in granting a new trial. Fisher v. VonBehren, 70 Ind. 19; Bank v. Johns, 22 W. Va. 520; Tower v. Whip (W. Va.), 44 S. E. 179; Lindley v. Hoffman (Ind.), 53 N. E. 471; Mackey v. Patterson, 29 Minn. 298; Bank v. Smith, 55 N. H. 593; Baldwin v. Barrows, 86 Ind. 351; Bedell v. Herring, 77 Cal. 572; Shirts v. Overjohn, 60 Mo. 305; Bank v. Wade, 73 Mo. 558; Lewis v. Land Co., 124 Mo. 687; Campbell v. Railway, 175 Mo. 161; Bank v. Stanley, 46 Mo. App. 447; Bank v. Clark, 52 Mo. App. 599; Cowgill v. Petifish, 51 Mo. App. 265; Stewart v. Sparkman, 75 Mo. App. 109.

*A. H. Livingston* and *J. N. Burroughs* for respondent.

Prior to the case of Shirts v. Overjohn, 60 Mo. 305 (relied on by appellant), the rule was established in this State that when a note was obtained through fraud such defense could be made by the maker, notwithstanding the instrument had passed into the hands of an innocent purchaser for value. In this case, however, this rule was modified and a number of prior cases directly and in effect overruled. Frederick v. Clemmens, 60 Mo. 313; Kalamazoo v. Clark, 52 Mo. App. 593.

GOODE, J.—This is an action on a negotiable promissory note in the usual form, dated May 4, 1904, for the sum of $126, payable six months after date to the order of F. R. Green, with interest from date at eight per cent. In defense it was set up in a duly verified answer, that defendant did not sign and deliver the note to the payee F. R. Green. In addition to this plea of *non est factum,* a special defense was pleaded, i. e., that if the signature to the note was defendant's it was procured by fraudulent means by Green the payee, and by the substitution at the time defendant's signature was subscribed, of the note for a contract he believed he was signing, or through some other trick, scheme, fraud or contrivance practiced to procure his signature without his knowledge or consent. The reply was a general denial. A verdict was returned for plaintiff, but afterwards was set aside by the court on the ground that erroneous instructions had been given in his favor. These instructions advised the jury in substance, that if defendant signed the note sued on, believing and relying on the representations of Green that the paper was a contract appointing defendant agent, instead of a promissory note, but defendant could have had the paper he signed read or explained to him by some member of his family and neglected to do so, he had

omitted to observe reasonable care and could not maintain the defense that his signature was procured by misrepresenting the contents of the instrument. The note is held by plaintiff, a banking company doing business in Howell county. The evidence shows plaintiff purchased it in due course of business for value a short time after its execution, in good faith and without notice or knowledge of any infirmity in the title of Green, who negotiated it to the bank. That plaintiff is a bona fide holder for value and purchased before maturity in due course of business, is not denied; but the defense relied on is fraud perpetrated by Green in procuring defendant's signature. The facts attending the execution of the note, stating them in the most favorable light for defendant the evidence will justify, were these: Green, the payee, lived at Bentonville, Arkansas. In April or May, 1904, he was in Howell county, selling a patent hay-baler and appointing agents to sell the same. He there met defendant, who is a resident of the county, and a transaction occurred between them in which the note in suit was signed. The defendant is a farmer who lives sixteen miles out of West Plains, the county seat of the county. He swore he could sign his name, but could not read or write. The entire evidence shows he knew nothing of Green at the time in question. Hall said Green came to the former's home, representing that he (Green) was appointing agents to sell his patent hay-baler and wanted Hall to become an agent. Hall objected, saying he had no learning; but Green said this would make no difference and asked if three balers might be sent to Hall. Green said if Hall could not sell them he (Green) would come and sell them himself; that the arrangement would cost Hall nothing. Hall swore he had no intention of signing a note, but supposed he was signing a contract about the three hay-balers which would be sent him. When the instrument

was produced he asked Green what it was, and the latter said it was nothing but a contract which he had to send to the company so they would forward the balers. Hall never received the balers or heard from Green afterwards. He did not positively deny the signature to the note was his own, and really there is no serious contention as to this. Hall swore the paper produced for him to sign was larger than a note. He said Green left with him two papers like two others which were introduced in evidence as exhibits. One of these exhibits purported to be a contract between the Memphis Machine Works and Green, by which the company covenanted that each hay-baler machine sold should be of certain material and workmanship, and also agreed to obtain favorable freight rates for the shipment of machines from Memphis. The other contract purported to be an instrument by which Green appointed Hall agent for the sale of patent hay-balers in a designated township in Howell county. It recited Hall accepted the agency. Neither of these exhibits was signed by Hall, but he swore the documents Green left with him looked like the exhibits. Hall swore he did not ask any one but Green to read the paper before signing it and that Green only read part of it; did not read it all. He swore further he did not ask any one of his family to read it; that his wife was there and she could read a little; three of his boys were there; these boys could read. The boys were 26, 22 and 13 years old respectively. He said he did not think it necessary to ask any of the family to read the paper before signing it, as he had not bought anything from Green. Hall said: "I signed a paper *I think he said was a contract about these three machines.*" One of Hall's sons, who was present at the time, swore Green came to the house and asked defendant for the machines and to sign up a contract; never said anything about a note; that witness's father (defendant) was to sell the machines and not pay for them

until they were sold; that was all the talk; when Green produced the contract to be signed, defendant did not want to sign it and Green said "it was nothing but a contract between him and father; that he would keep one and give father one; and he said there was no money to be paid until the machines were sold." Witness saw his father sign his name twice; witness could read; said the signature to the note in suit looked like his father's, saw his father take a pen and sign his name. The foregoing is substantially all the evidence in the case. The defense invoked is the doctrine declared in Shirts v. Overjohn, 60 Mo. 305, and other cases wherein a party sought to be charged on a bill or note, intended to bind himself by some obligation in writing, and signed his name to what he supposed to be the obligation he intended to execute, but was led to sign by fraudulent representations as to the nature of the instrument, or its contents. Whatever the rule may be elsewhere, it cannot be doubted that the decisions in this State exonerate from liability, even in an action by an innocent holder for value, the signer of a bill of exchange or a promissory note whose signature was procured through fraudulent practices which deceived him regarding the instrument or its contents, if he was not himself remiss in failing to learn the contents. The note in suit was given prior to the enactment of the Negotiable Instrument Act of 1905, and we need not determine whether said act has changed the law. In our opinion the undisputed evidence shows defendant was guilty of gross carelessness. It is true he could not read, but his three sons and wife were at hand who could read. It was his plain duty to call on them to apprise him of the contents of the instrument presented for signature before he signed it. His own testimony proved he did not even require Green to read all the paper he signed before he affixed his signature; and he said he *thought* Green said it was a contract. Such carelessness cannot

be excused at the expense of an innocent holder of negotiable paper. No fact appears which mitigates defendant's negligence in not having the paper read to him by some member of his family who was present, or at least read in full by Green. Defendant was not shown to have been infirm in mind or body, but, on the contrary, was in full enjoyment of his faculties and of good intelligence. No relation of confidence or trust existed between him and Green, for all the circumstances show the latter was an entire stranger to defendant until this visit. We do not think that in every instance an illiterate man must ask some one other than the party seeking his signature to an instrument, to read it before he signs it. In the case of one dealing with an old acquaintance and trusted friend, carelessness might not be imputed if the signer was deceived by relying on the representations of the other party. The facts before us are different. It is generally, and we believe universally, held to be inexcusable carelessness for a person who can read an instrument to sign it without reading; and in such instances the signer, if it is a negotiable note, cannot defend against an action brought by an innocent holder on the ground of fraud in procuring his signature. If a man cannot read and members of his family are standing by who can, it is as easy to have them read a paper as it would be to read it himself; and certainly when he contents himself with a partial reading by a total stranger, he is in fault. We are cited to Kalamazoo Bank v. Clark, 52 Mo. App. 593, as opposed to this argument, but really the opinion therein supports it. That defendant's plea of fraud was submitted to the jury though he might have had his family read the notes before signing them, because the signing occurred away from his home and he was shown to be far advanced in life and that his mental powers bordered on imbecility. Cases directly in point, that such conduct as defendant's establishes negligence as a mat-

ter of law, are Lindley v. Hoffman, 53 N. E. 471; Fisher v. VonBehren, 70 Ind. 19; Baldwin v. Barrows, 86 Ind. 351; Mackey v. Patterson, 29 Minn. 298; Citizens Bank v. Smith, 55 N. H. 593; Bedell v. Herring, 77 Cal. 572.

The point is made against the instructions for plaintiff that they ignored the defense of forgery. It is argued the evidence tended to show the note in suit was detached from some other paper and thereby became a forgery under section 2018 of the Revised Statutes of 1899, describing the crime of forgery by mutilating instruments or detaching parts of them so as to leave valid obligations against parties who sign. It is said if the instrument was forged in that manner, it is void in any one's hands. We find no evidence tending to prove the note in suit had been detached from some other document, nor was such a defense submitted in the instructions. Those requested by defendant's own counsel show the defenses were either that the signature to the note was not genuine, or, if it was, that it was procured by misrepresentations regarding the effect of the paper. We hold the evidence had no tendency to make good a defense and the order granting a new trial is overruled and the cause remanded with a direction to the court to enter judgment in accordance with the verdict. All concur.