# FLORA DULIN BROWN GIDEON, Respondent, v. MARY F. TEED, Appellant.

### In the Springfield Court of Appeals, July 2, 1924.

1. **APPELLATE PRACTICE: Inferences in Favor of Defendant on Review of Directed Verdict for Plaintiff.** On review of directed verdict for plaintiff, defendant must be given benefit of every inference that can logically be drawn in her favor from her testimony.

2. **BILLS AND NOTES: General Law of Contracts Rather Than That of Negotiable Instruments Governs in Suit Between Original Parties.** In suit between original parties to note which has never been negotiated, law of contracts governs independently of rules laid down by statutes or decisions concerning negotiable instruments.

3. **CONTRACTS: Rule Stated as to When One May Contend That He Signed Contract in Ignorance of its Character.** Before one in full possession of his faculties and capable of reading contract can contend that he signed paper turning out to be contract, under impression that it was receipt, he must show that he was induced to sign it through fraud practiced by other party, and that as a matter of law he was not negligent in entering into transaction or signing paper.

4. **BILLS AND NOTES: Whether Defendant was Negligent in Signing Note without Reading it Held for Jury.** In suit by daughter on note made payable to her by defendant, her mother, in which mother contended that she signed note because induced by representations of daughter to believe it to be receipt, whether mother was negligent in not reading paper which she signed *held* for jury.

Appeal from the Circuit Court of Greene County.—*Hon. Guy D. Kirby*, Judge.

REVERSED AND REMANDED.

*Hamlin & Hamlin* for appellant.

(1) The court should have submitted to the jury the question whether the money given the defendant by the plaintiff at the bank was a payment of indebtedness due from her to the defendant, or a loan. This case is an exception to the rule, that where one signs an instrument he must read it, if he can read, because a trick was resorted to by plaintiff for the purpose of preventing defendant from reading the paper. Wells v. Adams, 88 Mo. App. 215. (2) Courts will not turn a deaf ear to one of the contracting parties who seeks to get rid of a contract, when the other party is charged with fraud in reading the contract to him, or in stating its nature, or terms, especially where there is a known trust or confidence reposed in the person making the representation, and a relationship justifying such trust. Nicol v. Young, 68 Mo. App. 448, and cases cited. (3) The defendant reposed confidence in the plaintiff, a confidential relationship existed between them, therefore the representation of the plaintiff that the paper was a receipt was a concealment and a breach of confidence, and the judgment should be reversed. Lee v. Lee, 258 Mo. 613.

*H. D. Durst* and *G. G. Lydy* for respondent.

(1) The court committed no error in giving the peremptory instruction. The defendant admits she signed the note, that she can read and write and that she received $125 from plaintiff at the time she signed the note. The note is in the usual form and recites an unconditional promise to pay said amount for value received without defalcation or discount. Section 846, R. S. 1919, fixes the liability of defendant as follows: "The maker of a negotiable instrument by making it engages that he will pay it according to its tenor, and admits the existence of the payee, etc." (2) The evidence of defendant that she thought the note was a "receipt" and that the money was to apply on an antecedent debt already paid and barred by limitation, is not admissible, and is

no defense because defendant cannot by parol evidence contradict her written contract to pay, and cannot thus prove a different contemporaneous agreement. Woodson, Ex'r v. Ritchie, 36 Mo. App. 506; Shaw v. Shaw, 50 Me. 94, 79 Am. Dec. 605; Billings v. Billings, 10 Cush. (Mass.) 178; Dickson v. Harris (Iowa), 13 N. W. 335; Simonton v. Shaw, 246 Fed. 683. (3) The note shows on its face that it was given for value received and imports a consideration. The admission that defendant received the sum of money for which the note was given, at the time it was executed, is conclusive evidence of a valid consideration and eliminates from the case the plea of fraud. It is the duty of the court to direct a verdict in such cases. Sec. 2160, R. S. 1919; Bross v. Stancliff, 211 Mo. App. 342, 240 S. W. 1091; American Ins. Co. v. Smith, 73 Mo. 368, 1. c. 370. (4) There is no question of a fiduciary relationship in this case. The mere fact that the payee is the daughter of the maker of the note is not evidence of such a relationship. Lee v. Lee, 258 Mo. 613.

FARRINGTON, J.—The plaintiff, a married woman, is the daughter of the defendant. She instituted this suit in the justice court upon a promissory note dated at Springfield, October 2, 1914, due two years from date, payable at the Bank of Springfield, with interest at eight per cent per annum from date, payable semi-annually, signed Mary F. Lewton. Mary F. Lewton has since married Teed, and was sued under the latter name. The note is regular on its face, signed by the defendant, and therefore purports a consideration, it being made in the sum of $125.

After the evidence on the part of the plaintiff and defendant had been offered, the trial court directed a verdict for the plaintiff, and this appeal is taken from the judgment rendered thereon.

The contention made by the defendant, appellant here, is that the note was procured by fraud and deception on the part of her daughter, and that the signature

to the paper which has turned out to be a promissory note was procured on the statement that it was a receipt for $125 she was signing. As the judgment was the result of a direct verdict for plaintiff, we must give every inference to defendant's testimony that can logically be drawn therefrom in her favor, and determine then whether she was entitled to go to the jury on the case she attempted to make. The defendant's story, in short, is as follows:

That the plaintiff is her daughter, a married woman, who had lived with her from time to time, and that prior to the demand of payment of this note the relations between them were good. She testified that years before the date the note bears she had loaned to her daughter, the plaintiff, the sum of $261, without taking any note or memorandum in writing, with the understanding that it was to be paid back in monthly installments of $5 each; that payments were made amounting to $126. She produced a memorandum book showing the payments and dates of same, and testified that there was a balance still due on the original indebtedness of about $147. It was also shown by the defendant, and admitted by the plaintiff, that on another occasion the mother had loaned the daughter $100 to help purchase a home, which was loaned without any note or written memorandum, and that $100 was repaid.

The plaintiff contends that all of the money she had ever borrowed from her mother had been repaid, and that at the time the note was given her mother asked her for a loan of $125 and that she, the plaintiff, in company with the defendant went to a bank in Springfield, procured from the bank $125 and delivered it to the defendant, and at that same time and place she drew the note sued upon and that her mother signed it knowing that it was a note for the $125. The defendant testified that at the time the money was turned over to her in the bank that she had asked her daughter for $125, and that the daughter went to the bank, just as she, the plaintiff, testified, to procure the money and turned it over

to her and that the same was not a loan made to the defendant but was merely a payment of the balance due on the money which she claimed to have loaned to her daughter, and which had never been repaid. And the defendant testified that when she received this money from her daughter in the bank the daughter stated that in case she, the mother, should die, a receipt should be given that this money had been repaid and that she offered her this paper to sign and told her that it was a receipt. The defendant testified that she had full confidence in her daughter and relied upon her word, and that she signed the paper having been told by her daughter that it was a receipt, and in fact it afterwards turned out to be the note sued on in this case.

The trial court by its action in directing a verdict held, as a matter of law, that the defendant's own testimony precluded her from making this defense and that the plaintiff was entitled to a judgment, as a matter of law.

In considering the law governing this transaction we may state in the beginning that the law of contracts governs it independently of the rules laid down by statute or decision concerning negotiable instruments. The suit is between the original parties, the note never having been negotiated.

The respondent contends that inasmuch as it is shown that the mother could read and write, and signed this paper at the very time and place that the money which she received was paid to her by the plaintiff, that she will not then be permitted to dispute the validity of the note or to offer any evidence which would change, alter or make nugatory the provisions of the contract. The appellant, on the other hand, contends that the note was procured by fraud and deceit; that it was signed on the statement made by the plaintiff that the paper defendant was signing was a receipt, and that under the circumstances, considering the negotiations, relations and circumstances surrounding these parties she, the mother, would not be held to the same degree of care

which would be required had she been dealing with an entire stranger.

The law seems to be well settled in cases cited by respondent that when one who is in full possession of his faculties and is capable of reading a contract or paper put before him to sign, will be held to the contract as written and will not be permitted to dispute its validity. Cases upholding this proposition are: Woodson, Executor, v. Ritchie, 36 Mo. App. 506; Bross v. Stancliff, 211 Mo. App. 342, 240 S. W. 1091; American Ins. Co. v. Smith, 73 Mo. 368; Deming Investment Co. v. Wasson, 192 S. W. 764. All of the cases which we have examined hold that before one can escape the consequences of signing a contract, or a paper which turns out to be a contract, he must show, first, that he was induced to sign the instrument through fraud practiced by the other party; and, as a second element of a good defense, he must show evidence from which it can be reasonably inferred that he, as a matter of law, was not guilty of negligence in entering into the transaction or signing the paper. That is to say, in order to make a good defense there must be evidence of a misrepresentation, coupled with evidence of due care and caution on his part, and it is the latter element in this case which is the serious question, and the one upon which we think the trial court erred in denying the defendant the right to have the jury pass on whether her defense as testified to by her was true. Her testimony undoubtedly is to the effect that the daughter told her that the paper she was signing was a receipt, and while it is true that she could read and did not do so, which under ordinary circumstances binds the party, as a matter of law, yet she was surrounded, and we might say, in a measure blinded, if her testimony be true, by the confidence which she imposed in her daughter. Speaking of her in her testimony she called her her baby child. We have here a daughter and mother who apparently from all the testimony had been on splendid terms for a great number of years. The mother had loaned to the daughter, this

plaintiff, money when she needed it without requiring a note or any other written memorandum, and under the undisputed testimony had permitted it to be paid back in installments. It is admitted by the plaintiff that on another occasion she had borrowed $100 for the purpose of helping to purchase a home, and that was loaned without scratch of pen or anything to show the transaction, and during these times the daughter with her former husband had gone to the home of defendant, the mother, and lived there. While the relation existing between them cannot be denominated in law as a trust relation, yet it is the natural relation of mother and daughter which, when it comes to measuring the question of the degree of care, prudence and negligence, is one of the surrounding facts and circumstances which must be taken into consideration. We are, therefore, unwilling to say, as a matter of law, that this defendant was guilty of negligence but believe that it is a question of fact for a jury to determine whether a mother, if her story be true, was guilty of negligence in not reading this paper which she signed in the bank to determine whether the daughter was representing it correctly or not.

Most of the cases which permit the defense of fraud to go to a jury are those in which the signer of the contract was either blind or incapacitated in some way to read it, or was tricked by deft manipulation into signing a paper which had not been agreed upon. It is the infirmity or the trick practiced which excuses the signer from being guilty of negligence in signing. We do not think that it will widen the exceptions which have already been made to hold that where the contract is entered into between parties having relations such as these people have had, that it becomes a question of fact for the jury to determine, under these relations and circumstances, whether the defendant was guilty of negligence in signing this paper from the hands of her daughter; and we hold that under such facts and cir-

cumstances as surround this case she cannot be declared negligent, as a matter of law. This principle has been recognized in cases dealing with this subject in the case of First National Bank v. Hall, 129 Mo. App. 286, 108 S. W. 633, the court, on page 292, said: "In the case of one dealing with an old acquaintance and trusted friend, carelessness might not be imputed if the signer was deceived by relying on the representations of the other party. The facts before us are different." In that case court lays stress on the fact that the defendant there was dealing with a total stranger.

The rule contended for by appellant was invoked against the appellant in the case of United Breeders Co. v. Wright, 134 Mo. App. 717, 115 S. W. 470, where the parties were utter strangers. In that case the court recognizes the fact that if the parties claimed to be defrauded and showed that they were not guilty of negligence, the defense may be invoked. [See, also, Main v. Hall, 127 Mo. App. 713, 106 S. W. 1099.]

The case of Pioneer Stock Food Co. v. Goodman, 201 S. W. l. c. 579, recognizes the two elements necessary for a valid defense in such cases. One is the question of whether a fraud was perpetrated, and, second, whether the defendant was negligent. The case at bar differs from cases such as Paris Mfg. & Imp. Co. v. Carle, 116 Mo. App. 581, 92 S. W. 748, in that in the latter case the party attempting to escape the contract admitted that she knew that it was a contract which she was signing, but undertook to state that by verbal understanding it was not to be as written. In the case at bar the defendant testified that she never knew she was signing a note. The question, therefore, limits itself in this inquiry to the degree of case she exercised and not to the question of having knowingly done a thing and then undertaking to exercise it by swearing to a different verbal arrangement.

In the case of Crim v. Crim, 162 Mo. 544, 63 S. W. 489, the defendant there knew he was signing a note, and

then undertakes to defend on the ground that the plaintiff had told him he would never enforce the note and that he in fact did not owe the plaintiff the amount of money promised in the note to be paid, and knowing that it was a note did not know that it contained a provision authorizing confession of judgment.

The law forbids one who admits that he knew he was signing a contract, to testify that although a contract in form it was to be considered as something else, such as a receipt, or would not be enforced, and etc. That rule, however, should not apply with the same rigor to one who signs a paper which turns out to be a different character of paper to what he thought he was signing. In the one case, where the contract is knowingly made and placed in writing, the law holds the party to the terms of it. In the other case, if what was signed turns out to be a contract, procured under the representation that it was a receipt, then the only question for determination is, whether the party taken advantage of was guilty of negligence. If he is guilty of negligence, as a matter of law, then he is left by the law as in all negligence cases, where he placed himself.

In the case of Woodson, Executor, v. Ritchie, supra (36 Mo. App. 506), relied upon by appellant, the facts of that case show that the defendant knew that she was signing a note, and knowing that she was signing a note she will not then be permitted to say that the paper, although a note in form, was to act as a receipt. The difference between that case and ours is that the defendant here testified that she did not know that she was signing a note but thought she was signing a receipt, having been told that by her daughter, leaving the question to be determined in this case, is the defendant guilty of negligence in accepting her daughter's word rather than reading the paper, which the law would have held her to do had she been dealing with an utter stranger.

In the case of Bross v. Stancliff, 211 Mo. App. 342, 240 S. W. 1091, the question was purely one of varying

the terms of a contract which was known to have been a contract when entered into.

If defendant's evidence is to be believed, her daughter misrepresented the fact to her when she signed the note sued on, and under the relations which had existed between these parties, and in the transaction of their business, we are unwilling to declare, as a matter of law, that she was negligent in not reading what she was signing. It is for the jury to say whether they will believe the story told by the plaintiff or that told by the defendant as to what took place when the note was signed; and should the jury find there was a misrepresentation made when the note was signed, they must go farther and find whether, under the facts and circumstances of the case, the defendant acted as a reasonably prudent person in signing it without reading it. For these reasons we hold that the judgment is erroneous and is reversed and the cause remanded. *Cox, P. J.,* and *Bradley, J.,* concur.